RECEIVED

FEB  9 2023

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF:** § | |
| § | |
| **RICHARD SADDLER,** § | |
| § | |
| **Claimant/Plaintiff** § | |
| § | |
| **V.** § | **Case No.** |
| § | |
| **CARVANA, LLC,** § | |
| § | |
| **Respondent/Defendant,** § | |
| § | |
| **And** § | |
| § | |
| **BRIDGECREST ACCEPTANCE** § | |
| **CORPORATION,** § | |
| § | |
| § | |
| § | |
| **DRIVE TIME AUTOMOTIVE GROUP,** § | |
| **INC.,** § | |
| § | |
| **Additional Respondents/Defendants.** § | |

---

## PLAINTIFF'S MOTION FOR ORDER VACATING PARTIAL FINAL ARBITRATION AWARD AND ANY SUBSEQUENT AWARD ISSUED BY ARBITRATOR

The Plaintiff, Richard Saddler ("Plaintiff"), respectfully moves this Court for an order, vacating the Partial Final Arbitration Award, pursuant to 9 U.S.C. §10.  In support thereof, Plaintiff states as follows:

1

**INTRODUCTION**

In order to explain the full extent of how the Partial Final Award from the Arbitrator

violated the FAA in three respects, all pursuant to the statutory grounds outlined in 9

U.S.C. §10(a), it is necessary to have an understanding of who the Parties are including

Defendant's and how they are owned and operated. **(See Verified Consolidated**

**Derivative Complaint Delaware State Court)** attached under "*Relevant Documents for*

*the Courts Review*"

Plaintiff has continuously informed the Court and Arbitrator throughout this case

that Drive Time is a private company that is owned by Ernest Garcia II. Ernest Garcia II

was a player in the savings and loan crisis in the late 1980s and he pled guilty to a felony

fraud charge in 1990, so therefore he is unable to be a CEO of a publicly traded

corporation. Carvana was founded in 2012 by Ernest Garcia III, Ryan Keeton, and Ben

Huston. Carvana went public on April 28, 2017, its shares ended that day at approximately

$11.10. On January 24, 2020, Carvana shares were $83.11, with highest value being

$99.19 in December 2019. Bloomberg reported that Ernest Garcia II's felony conviction

was not disclosed in Carvana's Security and Exchange Commission filings according to

an article in Forbes. The two largest shareholders of Carvana are Ernest Garcia II and

Ernest Garcia III, who combined own a super majority of Carvana shares which provides

them with controlling voting rights. On or about November 19th, 2014, the Consumer

Financial Protection Bureau ("CFPB") took action against a "buy here, pay here" car

dealer named Drive Time and fined them a civil money penalty of $8,000,000.

**(Exhibit A)** "The CFPB noted that 'at least 45 percent of Drive Time's auto installment

2

contracts were delinquent at a given time'." **(Exhibit A)** Shortly thereafter Drive Time

spun off its' loan servicing division and renamed it Bridgecrest Acceptance Corporation

in 2016. Drive Time owns 100% of Bridgecrest.

In addition, Plaintiff informed the Arbitrator of relevant conduct in other

jurisdictions complaints against the Defendants beginning with the North Carolina

Department of Motor Vehicles (NCDMV) which sued Carvana for failing to deliver titles

to the department, sold a motor vehicle without a state inspection, and issued out-of-state

temporary tags/plates for a vehicle sold to a person in North Carolina. On August 2,

2021, NCDMV and Carvana agreed to a settlement whereby Carvana's North Carolina

Dealers License was revoked for a period of 180 days.

The State of Florida filed an administrative complaint, citing Carvana's

Jacksonville location and Carvana's CEO, Earnest C. Garcia III, for failing to transfer

titles within 30 days, as Florida law requires. The administrative complaint named twelve

Florida consumers who had been impacted by Carvana's failure to timely transfer titles.

In September 2021, CARVANA was ordered to pay a $6,000 fine.

In August 2021, the State of California and Carvana settled a lawsuit that had

been filed in Los Angeles County, California, and Carvana agreed to pay a fine of

$850,000 for operating in California without a dealer's or transporter's license. Carvana

had been selling cars to California consumers since 2015 but did not obtain a dealer's

license until May 2019, same as in this case; beginning in September 2017, Carvana

delivered numerous cars to California customer using its own delivery vehicles but had

no transporter's license.

3

In May 2021, the State of Michigan fined Carvana $2,500 for seven violations of state rules for vehicle dealers, including improperly issuing temporary registrations. Carvana also agreed to18 months' probation, during which the state can suspend or revoke their license to sell cars if it fails to comply with Michigan law.

In October 2021, the State of Texas fined Carvana for more than $10,000 regarding titling and other documentation issues.

Since the Arbitration Hearing, Claimant has learned that there is a pending Class Action lawsuit titled Jennings and Furlong v. Carvana, LLC in the US District Court for the Eastern District of Pennsylvania case number 5:21-cv-05400-EGS. **(Exhibit B)** This lawsuit alleges violations of the Pennsylvania Unfair and Deceptive Trade Practices Act.

In Exhibit B, it is alleged that "Carvana's failure to timely register cars as it promised and received money to do – sometimes for a period exceeding two (2) years - causes consumers to be questioned and sometimes arrested by law enforcement while driving the temporarily registered cars." **(Exhibit B, p 1)** The Complaint states that "*Rather than correct its routine business practice when confronted by its consumer customers, Carvana has resorted to a myriad of dubious excuses for its dilatory conduct including blaming COVID and administrative logjams caused by state Departments of motor vehicle administration and its third-party vendors to whom Carvana sub-contracts the registration process post-sale.*" **(Exhibit B, p 1-2)**

Exhibit B details twenty-six (26) individuals who have suffered the same issues as Saddler. In the facts alleged about the individuals outlined in **Exhibit B**, some of them were provided with temporary tags issued from up four (4) different US states.

The US District Court entered an Order which denied Carvana's Motion to Compel Arbitration. **(Exhibit C)** Therefore, case number 5:21-cv-05400-EGS is still pending in the US District Court for the Eastern District of Pennsylvania.

Plaintiff requested that the Arbitrator allow him to depose Ernest Garcia II, Ernest Garcia III and other corporate officers but the Arbitrator refused. These individuals are the heart of the fraud which has been perpetrated by Drive Time, Carvana and their subsidiaries – for no good reason whatsoever.

The Partial Final Award failed to make mention relevant conduct by Defendants throughout the U.S. as referenced in Exhibit C, but the Arbitrator began his findings about Plaintiff's testimony at the arbitration hearing stating that "I do not find Claimant's testimony credible for many reasons. Claimant has been convicted of federal mail fraud in 2006 and three counts of federal wire fraud in 2014." Although Plaintiff is not proud that he is a convicted felon, Plaintiff chose to live as a law abiding individual subsequent to his felony conviction, but Ernest Garcia II has chosen a different path – one which harms the average consumer.

The Arbitrator refused to allow Plaintiff to put forth the evidence that absolutely shows that Plaintiff is not the only consumer harmed by Carvana's conduct and Plaintiff believes that this conduct starts at the top of the corporate hierarchy, but the Arbitrator for whatever reason refused to allow Plaintiff to prove his case.

Plaintiff asserts that fraud has permeated every aspect of his case against Carvana, but obviously just because Plaintiff is a two-tine convicted felon, he can't be believed. This absolutely shows just how biased the Arbitrator was against the Plaintiff.

5

## STATEMENT OF FACTS

An arbitration hearing was held in this case on November 1, 2022, with a Partial Final Award issued on January 30, 2023, in favor of the Defendant. Plaintiff now seeks an order vacating that decision.

Plaintiff purchased a 2015 GMC Terrain Denali (the "Vehicle") from Carvana, LLC ("Defendant") on September 21, 2018. On the date of delivery, Defendant had called Plaintiff to state that the Vehicle did not pass emissions. Plaintiff stated that he would take it through emissions himself and asked for delivery to proceed on that date. When the Vehicle was delivered, Defendant's representative approached Plaintiff to sign all required documents. Unfortunately for the representative, his computer was not working. Thus, Plaintiff could not electronically sign any documents that day. Plaintiff was able to hook up his printer, and Defendant's agent printed copies of the documents for Plaintiff to sign by hand. Thus, even though Defendant normally requires documents to be signed online through DocuSign, Plaintiff was not able to sign the documents in this way, as he did not sign the documents prior to the delivery of the Vehicle. Following his signature, Plaintiff received a hard copy of the documents that he signed on September 21, 2018. The hard copies of these documents were presented as evidence at the Arbitration Hearing, and such documents did not include an Arbitration Agreement.

After taking possession of the Vehicle, Plaintiff took the car through emissions on multiple occasions and sent such documentation to Defendant so that he could have the Vehicle titled and registered in his name. On November 1, 2018, Defendant began asking for additional documentation, including an "original" emissions report issued by the State of Missouri. Plaintiff attempted to explain that, in Missouri, there is no

6

"original" emissions report, as the report comes right from the dealer or authorized

vendor directly to the Department of Motor Vehicles to register the automobile. It turns

out this was a stall tactic used by the Defendants to mask the title deficiency in their

operations. Plaintiff stated that he sent passing emissions report to Defendant he received

from the repair shop, but Defendant denied ever receiving it. But Defendant sent Plaintiff

an email stating it had received the emissions inspection. When Defendant kept stating

that it had not received the emissions report, Plaintiff took the Vehicle through emissions

a second time, paid for the second test, and sent that report to Defendant again.

Defendant continued to claim, however, that it did not receive the emissions test needed

to register the Vehicle.

During the first year of owning the vehicle, Plaintiff continued to make payments

and request that title and registration be transferred to him from Defendant. Defendant

continued to claim that it did not have the proper paperwork to transfer such documents

to Plaintiff, even though Defendant was wrong. In November 2019, Plaintiff attempted

to make a payment on the Vehicle, but his payment was returned to him. Defendant had

taken away Saddler's ability to make any payments and threaten to take the Vehicle if

they didn't receive the emission inspection. Plaintiff then filed the present action. In state

court.

Even though this case had been filed in the Missouri state court, Defendants

removed to Federal Court and filed to dismiss that suit, arguing that there was a valid

arbitration agreement between the parties. Although Plaintiff disputed the legitimacy of

the arbitration agreement and denied ever having signed an agreement, the District Court

dismissed Plaintiffs action and ordered arbitration.

On September 2, 2021, Plaintiff asked that the arbitration matter be stayed, pending the case that was filed in state court against Plaintiff by Bridgecrest[1], a sister company to all Defendants, seeking monetary damages only. Such request by Plaintiff to stay the arbitration was denied.

In that same state case, Bridgecrest filed suit against Sadder, alleging, by affidavit, that DriveTime owned the Vehicle. **(Exhibit D, Affidavit)**

Based upon Bridgecrest's filing, Saddler filed a Motion to Remove to the U.S. District Court, case number 4:21-cv-01096-JCH, this case was remanded.

In response, Bridgecrest filed a Memorandum of Law In Support of Motion to Remand **(*Exhibit E, p 4, para 1 of Remand Memo*)**. In such motion, Bridgecrest admitted that there was an improper basis to file the instant matter, wherein it stated that "*After this court compelled Saddler's claims to arbitration, Saddler failed to take any steps to institute arbitration proceedings as provided for in the relevant Arbitration Agreement, and, eventually, Bridgecrest instituted the instant action in Missouri state proceedings*"

Bridgecrest knew arbitration was scheduled in this matter as both Bridgecrest and Carvana are represented by the same counsel.

After remand was granted in state court hearing, Bridgecrest's counsel informed this Court that it filed this action against Saddler in error, as opposed to what it claimed in Federal District Court. So, this was the second contradictory explanation, made by Bridgecrest to purposefully mislead the state court.

---

[1] Bridgecrest originally filed suit against Plaintiff in state court on April 15, 2021, which case was removed to federal court. Eventually, case was sent back to the state court, where it remains today.

On May 26, 2021, Bridgecrest mailed a copy of a Motion for Leave to Amend and attached as an Exhibit was the First Amended Petition for Replevin and Money Judgment. **(Exhibit F)**

Exhibit F shows that Bridgecrest knew that it did not file the suit in error as it double down on the same story, keep in mind all parties have been and still are represented by the same legal counsel.

On November 1, 2022, the Arbitrator held a full hearing between the parties.  At the hearing, Carvana testified that Carvana owned the Vehicle and that the Vehicle is the property of Carvana. Such allegation is evidenced by the Post Arbitration Hearing Memorandum, wherein Attorney McFarland argues that Carvana has a security interest in the Vehicle that Saddler purchased from Carvana. **(Exhibit G, p. 9)**

In **(Exhibit G at page 12)**, Attorney McFarland requests that the Arbitrator dismiss DriveTime from the Arbitration as being non-party.

As stated above, however, Bridgecrest already claimed that DriveTime owns the Vehicle. **(Exhibit D, Affidavit)**

On several occasions, Bridgecrest, through their counsel, Attorney Thomas McFarland, has made different explanations as to why it filed this lawsuit against Saddler. Each of these different explanations conflict for the purpose of his client depending on the day and the client.

These explanations show not only that Bridgecrest, through their counsel –

Thomas McFarland, filed the State case in retaliation against Saddler, but also to commit

fraud against the State Court and our legal system by the contents of said fillings.

As stated above, Bridgecrest pleaded in a United States District Court that "After

this court compelled Saddler's claims to arbitration, Saddler failed to take any steps to

institute arbitration proceedings as provided for in the relevant Arbitration Agreement,

and, eventually, Bridgecrest instituted the instant action in Missouri state proceedings ..."

**(Exhibit E, p 4, para 1 of Memo)**

The above-referenced statement evidence that Bridgecrest had absolute

knowledge that the matters contained in its lawsuit had already been ordered to

arbitration by a Federal District Court.

From the statement in Exhibit E, it is obvious that Bridgecrest, through Council,

filed the instant matter for an improper purpose.

As stated above, after remand was granted in open Court, Attorney McFarland

informed the state court that they filed their action against Saddler in error.

**Exhibit E** shows, however, that Council intended to file an Amended Complaint

on behalf of Bridgecrest. Council made no attempt to file these pleadings with the court;

however, Council sent me a copy of the pleadings and never actually filed such

pleadings.

The original petition that Council filed with the court and the amended petition which was never filed with the Court still affirmatively assert that DriveTime was the owner of the Vehicle.

Not only have the filings stated that DriveTime owns the Vehicle but preparing these pleadings with this false information and not filing the amended pleadings in court is evidence of the fraud that Defendants and Attorney McFarland are attempting to perpetrate on this court.

Between what they have stated in pleadings and testified to in arbitration, this Court can see there is a conflict as to the statements regarding who presently owns the Vehicle-Carvana or DriveTime.

Since Attorney McFarland represents each opposing party, it is obvious that each party had actual or constructive knowledge that the Federal case against Carvana had been ordered to arbitration and the case was dismissed. However, Attorney McFarland still wrongfully filed suit in the present matter on behalf of Bridgecrest.

The facts establish that the Bridgecrest filing was for an improper purpose, thus perpetrating a fraud on the Court and our legal system.

Furthermore, during the arbitration proceeding, Plaintiff requested permission to take certain depositions, including the depositions of the owners of Defendants. This request was also denied by the Arbitrator.

11

During the discovery process, both Plaintiff and Defendants submitted the same number of interrogatories and production of documents against each other. Plaintiff, however, was the only party reprimanded by the Arbitrator for submitting the incorrect number of discovery requests. Plaintiff was required to answer all the requests from Defendant, **Exhibit H & H1**, but the Arbitrator forced Plaintiff to lessen his requests, even though the Defendant did not have to lower the amount of its requests. **(Exhibit H & H1)**

Moreover, during discovery, Plaintiff sought to ask Defendant about the number of automobiles sold in the State of Missouri in 2018, as any dealer who sells more than six vehicles must be a licensed dealer in Missouri. Plaintiff suspected that Defendant sold more than six vehicles and, thus, Defendant should have been forced to obtain a dealer license. The Arbitrator, however, would not allow Plaintiff to ask such question of the Defendant and told Defendants they didn't have to answer the written discovery requested by Plaintiff. **(Exhibit I)**

Finally, during the hearing, the Arbitrator limited Plaintiff's ability to discuss Defendant's criminal history, and the history of all the fraud cases pending against Defendant. In the meantime, however, Defendant was not given any type of limit to discuss Plaintiff's criminal history during the hearing. **(Exhibit J)**

On January 30, 2023, the arbitrator issued a Partial Final Arbitration Award, ruling against Plaintiff. **(Exhibit K)**. In such award, Plaintiff was ordered to return the Vehicle and was not allowed to recover any damages as set forth during the arbitration hearing. Plaintiff now moves this Court for an order vacating the Partial Final Arbitration Award.

12

## ARGUMENT

Under the Federal Arbitration Act ("FAA"), a claimant in an arbitration can move to vacate the arbitration award, in whole or in part, based on very limited reasoning: (1) the award was procured by corruption, fraud, or undue means, (2) partiality was evident in any of the arbitrators, (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, in refusing to hear evidence pertinent and material to the controversy, or in any other misbehavior which prejudiced the parties, or (4) the arbitrators exceeded their powers. See 9 U.S.C. § 10(a). The U.S. Supreme Court has held that these four, statutory grounds are exclusive in FAA-governed cases, and parties cannot expand their narrow scope by agreement or agree that courts may vacate awards on any other grounds. See Hall St. Assocs., LLC v. Mattel, Inc., 5523 U.S. 576 (2008).

Here, Plaintiff is claiming that the Partial Final Award from the Arbitrator violated the FAA in three respects, all pursuant to the statutory grounds outlined in 9 U.S.C. §10(a). Thus, Plaintiff requests an order from this Court to vacate such award.

A.     **This Award Should Be Vacated Because The Arbitrator Wrongfully Refused To Delay The Hearing Pending A Matter In Court**

Pursuant to 9 U.S.C. §10(a)(3),

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration… (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown….

9 U.S.C. §10(a)(3). In this case, Plaintiff requested a stay, pending a lawsuit in the

courts, but the Arbitrator denied that request, absent any kind of reasoning, and Plaintiff

was forced to proceed with an arbitration to which he never agreed.

On September 2, 2021, Plaintiff wrote to the arbitrator in this matter, ensuring that

Defendant's counsel was sent a copy, and stated the following:

> it is my suggestion that we… temporarily postpone all functions of
> this case until the federal lawsuit has been preliminarily
> adjudicated. It wouldn't be financially cost-effective for us to be
> possibly fighting the same cases in to [sic] arenas.

**(Exhibit K)**. On September 13, 2021, the Arbitrator issued Order #2, stating: "I have

carefully reviewed the parties' requests and arguments. Claimant's request to postpone this

arbitration is DENIED." **(Exhibit L & L1)**

This case was pending in the courts because Bridgecrest, Defendant's sister

company, filed a suit against Plaintiff in the St. Louis County Courts even after being

ordered to arbitration **(Exhibit D)**. Plaintiff had originally filed suit against Defendant in

St. Louis County Courts, but such case was dismissed and ordered to arbitration. Prior to

the commencement of the arbitration matter but subsequent to the federal suit being

dismissed[2], Bridgecrest filed suit against Plaintiff. Bridgecrest attempted to claim it filed

the court action "in error", but it could not possibly have filed such action in error, as

both Bridgecrest and Defendant had the same owners and were represented by the same

counsel. The court action was filed as a retaliation for Plaintiff filing suit against

Defendant in the first place. Thus, Plaintiff asked that the arbitration be stayed, pending

_____

[2] There was a period of time in between the order to arbitration and the start of the arbitration matter that
the parties were discussing a possible settlement of the case. While all of these settlement discussions were
occurring, and understanding that arbitration was imminent if the settlement discussions ceased,
Bridgecrest decided to file a state court action against Plaintiff.

14

the outcome of the court action, as the parties would merely be spinning their wheels on

both ends, in arbitration and in state court.

Because it would be unfair to defend both cases at the same time, and because

Plaintiff never agreed that the matter should be in arbitration absent a non-fraudulent

arbitration agreement, Plaintiff asked for a stay in the matter, pending the court case.

Such request was denied, without providing any reasons, by the Arbitrator. The

Arbitrator wrongfully denied such request and is guilty of misconduct in refusing such

request. Defendant was rewarded in two ways from this wrongful decision. First,

Defendant was rewarded by submitting a fraudulent Arbitration Agreement, to which

Plaintiff never agreed, and thus Defendant was allowed to keep this case in arbitration, its

chosen venue. In addition, Defendant was rewarded for filing a retaliatory case in the

courts, forcing Plaintiff to defend both actions simultaneously. This decision by the

Arbitrator only caused to hurt Plaintiff and reward Defendant. This decision constituted

misconduct by the Arbitrator. Therefore, Plaintiff requests that this Court Order that the

Partial Final Arbitration Award should be vacated.

**B.      This Award Should Be Vacated, As The Arbitrator Refused Plaintiff's Request To Gather Pertinent Evidence In Discovery During This Case**

Pursuant to 9 U.S.C. §10(a),

> In any of the following cases the United States court in and for the
> district wherein the award was made may make an order vacating the
> award upon the application of any party to the arbitration…(2) where
> there was evident partiality or corruption in the arbitrators ….; (3)
> where the arbitrators were guilty… in refusing to hear evidence
> pertinent and material to the controversy; or of any other misbehavior
> by which the rights of any party have been prejudiced ….

9 U.S.C. §10(a). Here, the Arbitrator refused Plaintiff's request to take the depositions of

the owners of the Defendant and ruled unfairly against Plaintiff during the discovery

15

process. **(Exhibit M, N & O)** Therefore, the Arbitrator refused to allow Plaintiff to gather and, thus, present evidence that is pertinent to this matter.

On June 16, 2022, Plaintiff made a request from the arbitrator to allow for the depositions of Ernest Garcia II, Ernest Garcia III, and Mary Phillips, who are all owners or super majority shareholders in the companies involved with the arbitration. **(Exhibit N)** Plaintiff wished to prove that Defendant engaged in false and fraudulent behavior in this case, which was not new behavior to the Defendant. Indeed, the company was involved with similar lawsuits all across the country, and Plaintiff wished to show that engaging in this type of behavior constituted the modus operandi of the Defendant. **(See Verified Consolidated Derivative Complaint Delaware State Court)** attached under "*Relevant Documents for the Courts Review*"

On August 25, 2022, the Arbitrator denied Plaintiff's request. **(Exhibit E)** The request was denied because Plaintiff did not allege how Defendant's actions across the country injured him directly. Thus, Plaintiff was denied the ability to gather necessary evidence in the case and present his case at the arbitration hearing. These depositions could have shown that this was the way in which Defendant always operated. Defendant was not only hurting Plaintiff, but Defendant intended to hurt Plaintiff just as it intended to hurt all of the other individuals across the country for which Defendant was involved in lawsuits. Defendant operated its business in this manner. Thus, it was not a mistake or accident that Plaintiff was harmed by Defendant in this case. If the Arbitrator had been shown that evidence, which would have been gathered through the deposition process, this point would have been clear and the award would have been different.

16

Moreover, Plaintiff sent to Defendant discovery requests in the form of interrogatories and requests for production of documents.  Defendant first sent requests to Plaintiff, and then Plaintiff sent his requests to Defendant, mimicking the number of requests. Arbitrator was included on the email chain and was aware of all discovery request.  Although the number of requests provided by both parties was in excess of what should have been allowed, pursuant to the discovery plan in the case, only Plaintiff was reprimanded for exceeding the allotted requests.  **(Exhibit H & I)**  Plaintiff was forced to lessen the amount of his requests, while being forced to answer all of Defendant's requests even though they were not compliant.  Plaintiff was targeted by the Arbitrator and not treated in the same manner as the Defendant.  Plaintiff was not treated fairly, and the partiality of the Arbitrator was evident in the fact that only Plaintiff was punished for something done by both parties in this matter.

Furthermore, the Arbitrator ruled against Plaintiff's request for information from Defendant during the discovery process to determine how many vehicles Defendant sold in the State of Missouri during 2018.  Pursuant to RMO §301.550, a motor vehicle dealer is defined as anyone who sells more than eight vehicles in a calendar year.  Section 301.559 makes it unlawful for a dealer to transaction business in the state without a license.  Therefore, Plaintiff was attempting to gather information from Defendant to establish that Defendant was breaking the laws in the State of Missouri by selling the vehicle to Plaintiff, but the Arbitrator did not wish to hear such evidence. **(Exhibit H)** This evidence could have further proved Plaintiff's case, which alleged that Defendant routinely engaged in illegal, fraudulent, and criminal activity, not just in regard to Plaintiff, but throughout Missouri and throughout the United States.  Acting in this

17

manner was done in the regular course of business for Defendant, but the Arbitrator

limited Plaintiff's case and refused Plaintiff the ability to gather such information,

prejudicing Plaintiff's case.

Therefore, the Arbitrator in this matter was guilty of refusing to hear pertinent

evidence relating to the controversy and to the parties.  Such misbehavior prejudiced

Plaintiff's case.  Plaintiff should have been allowed to depose Garcia II, Garcia III, and

Phillips.  Plaintiff should have been allowed to inquire about the number of vehicles sold

by Defendant in Missouri.  The Arbitrator erred in refusing Plaintiff's requests and, thus,

this Court should issue an Order vacating the award.

**C.    This Award Should Be Vacated Based Upon The Arbitrator's Partiality During The Hearing**

Pursuant to 9 U.S.C. §10(a)(2),

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration… (2) where there was evident partiality or corruption in the arbitrators ….

9 U.S.C. §10(a)(2).  Here, the Arbitrator's partiality was evident from the way in which

he limited Plaintiff's ability to present evidence during the hearing, while not making the

same demands on the Defendant.

During the hearing, Plaintiff had evidence that Defendant acted fraudulently and

illegally in Plaintiff's case, but also acted in this way in many other cases across the

country.  Again, Plaintiff intended to show that doing business in a false and fraudulent

manner was the way in which Defendant conducted its business.  Fraudulent actions were

the modus operandi for the business model followed by Defendant.

18

Instead of being given free rein to present this evidence to the Arbitrator, Plaintiff was limited to just one hour to present such evidence. In the meantime, however, no such time restrictions were placed on Defendant, as it introduced evidence of Plaintiff's criminal history **(Exhibit J)**. Indeed, it is evident from the Partial Final Arbitration Award **(Exhibit P)** that the Arbitrator significantly considered Plaintiff's criminal history, as he stated that he did not believe Plaintiff's testimony based upon his former felony conviction. Such rulings and holdings of the court show a partiality against the Plaintiff in this matter. Plaintiff's ability to present his case was limited. Furthermore, even though Plaintiff has accepted and served his punishment for his past, he is still being punished by the Arbitrator today, punishing him a second time for such actions. The inconsistent rulings from the Arbitrator further show that he was partial towards the Defendant in this matter. Thus, his rulings should be vacated by this Court.

Arbitrators should not show any partiality towards one party over another and should not exceed their powers in procuring an award in a case. This, however, is exactly what happened here. The Arbitrator exceeded his powers in keeping this case in arbitration, even though Plaintiff never agreed to such arbitration and even though a case was pending in the state courts. Keep in mind that the State Court case was initiated by the same corporate parties in this arbitration. The arbitrator had to ignore what the corporate parties in their petition and me as defendant in my answer and counterclaim have all agreed that the state court is the proper venue. The Arbitrator exceeded his powers in limiting Plaintiff's ability to conduct discovery, and, thus, his ability to present his case properly before the Arbitrator. An award based upon such excess of powers and partiality towards one side over another should not be allowed to stand. Plaintiff requests

19

that this Court Order the Partial Final Arbitration Award vacated in this matter. By

issuing that order the St. Louis County case will proceed.

## CONCLUSION

WHEREFORE, for the foregoing considerations, the Plaintiff respectfully

requests an Order from this Court, vacating the Partial Final Arbitration Award because

the Arbitrator was biased against Plaintiff because of Plaintiff's two federal convictions.

It is very apparent that the Arbitrator abused his power as an arbitrator and

ignored all the relevant fraud that Carvana has committed against consumers in several

states just because he did not like Plaintiff.

Respectfully submitted,

RICHARD SADDLER
Pro Se
413 Genoa Drive
Manchester, MO 63021
310-428-2110 cell

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing was filed electronically
and served by mail on anyone unable to accept electronic filing.  Notice of this filing will
be sent by e-mail to all parties by operation of the Court's electronic filing system or by
mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic
Filing.  Parties may access this filing through the Court's CM/ECF System.

Richard Saddler

413 Genoa Drive
Manchester, MO
63021
310-428-2110 cell

**Plaintiff Exhibit List**

Exhibit A:  Consumer Financial Protection Bureau

Exhibit B:  Amended Complaint Class Action

Exhibit C:  Court Order and Memorandum Opinion

Exhibit D:  Bridgecrest State Court Petition

Exhibit E:  Bridgecrest Motion to Remand

Exhibit F:  Bridgecrest Motion for Leave to Amend not filed

Exhibit G:  Respondents' Arbitration Post Hearing Memorandum

Exhibit H:  Respondents' Discovery Request (Improper)

Exhibit H1:  Order 12

Exhibit I:  Plaintiffs Interrog Directed to Defendants

Exhibit J:  Order 15

Exhibit K:  Plaintiff Request to Stay Arbitration

Exhibit L:  Order 2

Exhibit L1:  Claimant Request for Arbitrator to Determine Jurisdiction

Exhibit M:  Emails Outlining Discovery Disputes

Exhibit N:  Claimant Request for Deposition

Exhibit O:  Order  11

Exhibit P: Partial Final Award

## Relevant Documents for the Courts Review

**Discovery**

- Claimant Request for Arbitrator to Clarify Paragraph 10 of Order 9
- Order 9 Plan of Discovery
- Respondents Reply to Saddlers Response to Discovery Confusion

**Bridgecrest Arbitration Request (State Case)**

- Bridgecrest Memo of Law to Compel Arbitration
- Defendants  Objection to Plaintiff Motion to Compel Arbitration

**Consumer Standards**

- Order No. 5 – Consumer Standards do apply
- Respondents letter to Arbitrator Consumer Standards do not apply

Order No. 13 - Claimant requested extension of time to file dispositive motion

Order No. 14 – Confusion about pleadings and denies Respondents Motion for Summary Judgement

Motion for Sanction Against All Opposing Parties

Defendants Amended Answer and Third Party Counter Complaint – Bridgecrest State Case
Verified Consolidated Derivative Complaint Delaware State Court-