Exhibit A

| | |
|---|---|
| **IN THE MATTER OF:** | ) |
| | ) |
| **Richard Saddler,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| **vs.** | )      **JAMS Ref. No 1440007303** |
| | ) |
| **Carvana LLC, et al.** | ) |
| | ) |
| **Respondents** | ) |

## Final Award

### Introduction and Procedural History

This matter came to arbitration by virtue of an Order from Hon. Henry Edward Autrey of the United States District Court, entered on August 11, 2020, in the matter of *Richard Saddler vs. Carvana, LLC, Case No. 4:20CV105 HEA*. In that Order, Judge Autrey granted the motion of Carvana LLC ("Carvana") to compel arbitration. This was in accordance with a certain Arbitration Agreement dated September 21, 2018, between Richard Saddler ("Claimant") and Carvana. The Arbitration Agreement provided for the resolution of claims by arbitration subject to certain detailed provisions. Both Judge Autrey and I have independently determined that Claimant executed the Arbitration Agreement based on the credible evidence.

On May 20, 2021, the Claimant filed his Demand for Arbitration. On June 17, 2021, the undersigned was appointed Arbitrator, having been jointly selected by the parties on June 14, 2021. Order No. 6 allowed the Claimant to file against additional Respondents due to the breadth of wording in the Arbitration

Agreement. That ultimately resulted in the addition of causes of action against Bridgecrest Acceptance Corporation ("Bridgecrest"), and DriveTime Automotive Group, Inc. ("DriveTime") (collectively with Carvana, "Respondents").

## Parties and Counsel

### Claimant:

Richard Saddler appearing pro se[1] ("Claimant")
413 Genoa Drive
Manchester, Missouri 63021

### Respondents:

Carvana LLC ("Carvana")

Bridgecrest Acceptance Corporation ("Bridgecrest")

DriveTime Automotive Group, Inc. ("DriveTime")

Representing all Respondents:

Thomas McFarland
Christopher Caldwell
Gullett Sanford Robinson & Martin PLLC
150 3rd Avenue South
Suite 1700
Nashville, Tennessee 37201

---

[1] As reflected in Order No. 1, because Claimant is unrepresented, I reviewed with him the information contained in the "Unrepresented Party Informational Notice" used by JAMS at the outset of this arbitration.

## Pleadings

On November 1, 2022, the matter came for Hearing. At that time Claimant's causes of actions were:

Count 1 – Breach of Contract (Carvana and Bridgecrest);

Count 2 – Statutory Fraud (Carvana);

Count 3 – Violations of the Missouri Merchandising Practices Act (Carvana and Bridgecrest);

Count 4 – Violation of the Covenant of Good Faith and Fair Dealing (Carvana, Bridgecrest, and DriveTime);

Count 5 – Constructive Fraud/Negligent Misrepresentation (Carvana);

Count 6 – Unjust Enrichment (Carvana and Bridgecrest); and

Count 7 – Negligent Infliction of Emotional Distress (Carvana, Bridgecrest, and DriveTime).


Respondent Carvana asserts that Claimant breached the contract and seeks either damages and or recovery of the vehicle.


## The Hearing

A Hearing in this matter was conducted on November 1, 2022. Claimant and Dori Guest, a former employee of Carvana, testified under oath. Exhibits were tendered by Claimant and Respondents. Subject to certain objections and qualifications, all exhibits in the Exhibit Book were received into evidence. [Transcript, page 33.] I overruled Claimant's objection to Carvana's recordings of Claimant. [Transcript, pages 135-136.] Although Respondents' objection to Claimant's late production of discovery appears meritorious, I

overrule the objection and will receive the exhibits in evidence to resolve this arbitration on a complete record. Claimant dismissed Count 7 – Negligent Infliction of Emotional Distress directed to Carvana, Bridgecrest, and DriveTime at the Hearing, leaving Counts 1 through 6 to be resolved.

## Disputed Matters

This parties have advanced two distinct narratives about Claimant's purchase from Carvana of an automobile—a 2015 GMC Terrain identified by VIN 2GKFLZE35F6281225, which still has not been titled and registered in Missouri some four years after its purchase.

To the extent my findings differ from any party's position, it is the result of a determination as to credibility and relevance, burden-of-proof considerations, legal principles, and the weighing of evidence, both oral and documentary. Claimant bears the burden of proof as to his claim; Carvana bears the burden of proof as to its counterclaim.

On September 21, 2018, Claimant purchased the vehicle from Carvana. Claimant executed a Retail Purchase Agreement, a Retail Installment Contract, and an Arbitration Agreement with Carvana electronically via DocuSign application. The vehicle was to be titled and registered in Missouri by Carvana. These agreements, among other things, required Claimant to pay for the vehicle[2] and Carvana to title it. They also imposed a covenant of good faith and fair dealing.

---

[2] Claimant agreed to pay Carvana 71 monthly payments in the amount of $527 and 1 final monthly payment of $487.53.

Carvana informed Claimant that the automobile failed its emissions testing. [Hearing Ex. 13, Carvana_Saddler 000247.] Claimant opted to take delivery of the vehicle nonetheless. The automobile was delivered to Claimant at his home at 413 Genoa Drive in St. Louis County, Missouri. Claimant represented to Carvana that he would have the emissions tested and provide the required emissions inspections to Carvana. Carvana repeatedly prodded Claimant to fulfill this commitment. Claimant failed to keep the commitment. No certificate of title for the vehicle has ever been issued by the Missouri Department of Revenue.

I do not find Claimant's testimony credible for many reasons. Claimant has been convicted of federal mail fraud in 2006 and three counts of federal wire fraud in 2014. Claimant explained that he abandoned efforts to work with Carvana because of an email that threatened repossession. [Transcript, page 51.] I do not credit this explanation. I likewise reject Claimant's testimony that he wished to avoid litigation [Transcript, page 80.] His conduct in this arbitration refutes that testimony. Claimant first represented that he had signed the arbitration agreement. [Transcript, pages 97, 105-106.] But Claimant later represented that he did not sign the arbitration agreement. Although Claimant portrays his earlier representation as a mere error of memory [Transcript, page 98], this conflicts with his later detailed memory of how the documents of sale were executed in this transaction. Claimant also did not include in his St. Louis County petition that he mailed an original emissions inspection report to Carvana, even though this issue is central to his dispute with Carvana. [Transcript, pages 106-107.] Claimant's testimony does not "add up." Because Claimant bears the burden of proof of his claims, his lack of credibility in and of itself defeats each and every claim he asserts.

Claimant's primary complaint is that the car has not been titled in Missouri. Claimant cites Section 301.210. I do not find that the Missouri statute governs unless a certificate of ownership was issued before the sale and was registered in Missouri. Moreover, the lack of titling is principally the consequence of Claimant's own failure to cooperate to secure the necessary emissions inspection. I find no liability for this on the part of any Respondent. Likewise, I am mindful that it was Claimant who opted to accept delivery of the vehicle without the title and then dishonestly failed to cooperate in its titling. Further, it is Claimant who breached the contract by failing to cooperate in the vehicle's titling and failing to make payments as required.

Claimant also faults Bridgecrest for its mistaken St. Louis County filing. But this filing resulted in no actual damages to Claimant.

Indeed, I reject all of the Claimant's evidence of damages. He seeks over a million dollars in damages for a dispute that could have readily been resolved. And he does this despite the fact that he has possessed and used the vehicle and stopped making payments on the vehicle in 2019.

I find the testimony of Dori Guest and the declarations of Grace DeJohn, Joshua Brown, and Dori Guest to be credible. I find the exhibits submitted by Respondents credible. I find that Claimant breached his contract with Carvana by failing to pay the amounts he owed after February of 2019. Likewise, he breached the contract by failing to honor his agreement to provide the necessary emissions inspection. Carvana has elected to seek the replevin of the vehicle rather than damages.

The Hearing conducted on November 1, 2022 was held open to allow receipt of the transcript and post-Hearing briefing [Transcript, pages 318 ff.] The post-Hearing briefs were received on January 3, 2023. At that time, the principal dispute was concluded to allow for entry of a partial final award. This partial final

award concluded the principal dispute and conclusively settled the claims advanced by Claimant and the counterclaim advanced by Carvana. Claimant is not entitled to ownership or possession of the vehicle. Nor is Claimant entitled to any damages. Carvana is entitled to ownership and possession of the vehicle. I awarded Carvana replevin of the vehicle.

A partial final award was entered in this matter on January 18, 2023, leaving unresolved a possible award of attorneys' fees or the costs of administering the arbitration to the Respondents. Having received no such request for attorneys' fees or the costs of administration, the matter is now fully concluded.

This  final award is in full settlement of all claims and counterclaims submitted to this arbitration. To the extent any objection, claim or counterclaim is not specifically mentioned herein, it is denied.

### Relief Awarded

As to Count 1 wherein Claimant alleges Breach of Contract by Respondents Carvana and Bridgecrest, Claimant shall take nothing because Claimant failed to establish his claim.

As to Count 2  wherein Claimant alleges Statutory Fraud by Respondent Carvana, Claimant shall take nothing because Claimant failed to establish his claim.

As to Count 3 wherein Claimant alleges Violations of the Missouri Merchandising Practices Act by Respondents Carvana and Bridgecrest, Claimant shall take nothing because Claimant failed to establish his claim.

As to Count 4 wherein Claimant alleges Violation of the Covenant of Good Faith and Fair Dealing by Respondents Carvana, Bridgecrest, and DriveTime, Claimant shall take nothing because Claimant failed to establish his claim.

As to Count 5 wherein Claimant alleges Constructive Fraud/Negligent Misrepresentation by Carvana, Claimant shall take nothing because Claimant failed to establish his claim.

As to Count 6 wherein Claimant alleges Unjust Enrichment by Carvana and Bridgecrest, Claimant shall take nothing because Claimant failed to establish his claim.

As to Count 7 wherein Claimant alleged Negligent Infliction of Emotional Distress by Respondents Carvana, Bridgecrest, and DriveTime, Claimant dismissed this count at the Hearing.

As to the counterclaim of Carvana against Claimant wherein Carvana alleges Breach of Contract by Claimant, Carvana has proven Claimant breached the contract and that Carvana is entitled to ownership and possession of the vehicle.  Claimant shall surrender the 2015 GMC Terrain identified by VIN 2GKFLZE35F6281225 to the possession of Carvana within ten days of today's date.  Carvana is awarded replevin of the 2015 GMC Terrain identified by VIN 2GKFLZE35F6281225.

SO ORDERED.

Dated: February 10, 2023

/s/ *Lawrence E. Mooney*

Lawrence E. Mooney
Arbitrator
JAMS

Electronically Filed - St. Louis County - April 15, 2021 - 08:46 AM

**21SL-CC01705**

*Exhibit* B

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI
ASSOCIATE CIRCUIT DIVISION

| | | |
|---|---|---|
| BRIDGECREST ACCEPTANCE CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | Division |
| RICHARD SADDLER | ) | |
| 413 GENOA DR. | ) | |
| MANCHESTER, MO 63021-6474 | ) | |
| | ) | |
| Defendant. | ) | |

PETITION

COMES NOW, Plaintiff, BRIDGECREST ACCEPTANCE CORPORATION, and for its cause of action against Defendant, RICHARD SADDLER, states as follows:

1.     This Court has original jurisdiction over this controversy, as Defendant contracted with Plaintiff and transacted business in this State, resulting in damage to Plaintiff and producing an actionable consequence in this state, and as such jurisdiction over Defendant is conferred upon this Court pursuant to Mo. Rev. Stat. 506.500 (1) and (2). Venue in this Circuit is proper because the transactions at issue were executed in this Circuit.

2.     Plaintiff and Defendant entered into a written contract. A copy of said written contract is attached hereto and marked "Exhibit A".

3.     Plaintiff fully performed as agreed.

4.     Defendant breached said written contract by failing to pay to Plaintiff the full agreed sum and now owes Plaintiff in the amount of $25,986.70, plus interest at the statutory rate of 9.00% from and after the date of judgment.

5.     Demand has been made upon Defendant, but the balance remains due and unpaid.

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

WHEREFORE, Plaintiff, BRIDGECREST ACCEPTANCE CORPORATION, prays for judgment against Defendant RICHARD SADDLER, for the sum of $25,986.70, for interest thereon at the statutory rate of 9.00% per annum from and after the date of judgment, and court costs.

BERMAN & RABIN, P.A.

Courtney M. George, #56123
cgeorge@bermanrabin.com
Daniel S. Rabin, #37315
drabin@bermanrabin.com
P.O. Box 480707
Kansas City, MO 64148
Phone: (816) 361-4848
ATTORNEYS FOR PLAINTIFF

2465319-178

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

MO-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | Richard Saddler | No. ████81880 | |
| 63 PIERCE RD | ████████████ | Date 09/21/18 | |
| WINDER GA 30680-7280 | ████████████ | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 0.00 |
| 12.64 % | $ 11,415.51 | $ 26,489.02 | $ 37,904.53 | $ 37,904.53 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 527.00 | monthly beginning 10/21/18 |
| 1 | $ 487.53 | 09/21/24 |
| N/A | $ N/A | N/A |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If you fail to pay your scheduled payment, in full, within 15 days of its due date, you agree to pay: 1. a late charge of $5.00, if the amount of your scheduled payment is $25.00 or less; 2. otherwise, a late charge of 5% of the amount of your scheduled payment, subject to a minimum late charge of $10.00 and a maximum late charge of $25.00.

Prepayment. If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2015 | GMC | Terrain | SUV | 2GKFLZE35F6281225 | 63770 |

| | | Other: |
|---|---|---|
| ☐ New | | N/A |
| ☒ Used | | |
| ☐ Demo | | |

## Description of Trade-In

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: _____ N/A _____ N/A . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

Payment. You promise to pay us the principal amount of $ 26,489.02 plus finance charges accruing on the unpaid balance at the rate of 12.64 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the Truth-in-Lending Disclosure. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

Down Payment. You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the Itemization of Amount Financed.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ Minimum Finance Charge. You agree to pay a minimum finance charge of $ _____ N/A _____ if you pay this Contract in full before we have earned that much in finance charges.

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

RSSIMVLFLZMO 10/10/2015
Page 1 of 5


exhibit A

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 1,652.02 ) | $ | 23,352.02 |
| b. | Service Contract, paid to: Carvana | $ | 2,350.00 |
| c. | Cash Price (a+b) | $ | 25,702.02 |
| d. | Trade-in allowance | $ | 0.00 |
| e. | Less: Amount owing, paid to (includes m); N/A | $ | N/A |
| f. | Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ | 0.00 |
| g. | Cash payment | $ | 0.00 |
| h. | Manufacturer's rebate | $ | N/A |
| i. | Deferred down payment | $ | N/A |
| j. | Other down payment (describe) N/A | $ | N/A |
| k. | Down Payment (f+g+h+i+j) | $ | 0.00 |
| l. | Unpaid balance of Cash Price (c-k) | $ | 25,702.02 |
| m. | Financed trade-in balance (see line f) | $ | 0.00 |
| n. | Paid to public officials, including filing fees | $ | 92.00 |
| o. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| p. | Administrative Fee | $ | 0.00 |

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS NOTICE IS REQUIRED BY LAW.

| | | | |
|---|---|---|---|
| q. | To: Gap Coverage | $ | 695.00 |
| r. | To: N/A | $ | N/A |
| s. | To: N/A | $ | N/A |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | To: N/A | $ | N/A |
| aa. | Total Other Charges/Amts Paid (m thru z) | $ | 3,137.00 |
| bb. | Prepaid Finance Charge | $ | 0.00 |
| cc. | Amount Financed (l + aa-bb) | $ | 26,489.02 |

We may retain or receive a portion of any amounts paid to others.

## Insurance Disclosures

Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☐ None
Premium $ N/A          Term N/A
Insured N/A

**Credit Disability**

☐ Single   ☐ Joint   ☐ None
Premium $ N/A          Term N/A
Insured N/A

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems TM VMP®
Wolters Kluwer Financial Services © 2015

### THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

| N/A | N/A |
|---|---|
| By: | DOB |

| N/A | N/A |
|---|---|
| By: | DOB |

| N/A | N/A |
|---|---|
| By: | DOB |

You have the right to cancel credit insurance within 15 days of buying it and receive a full refund or credit for the credit insurance premium.

Property Insurance. You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent or broker you may choose; that you may do so at any time after the date of this loan; that you have not cancelled any existing insurance on your Property if you owned it before this loan; and that this loan cannot be denied simply because you did not purchase your insurance through us. **YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

This premium is calculated as follows:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | $ N/A | Deductible, Collision Cov. | $ | N/A | |
| ☐ | $ N/A | Deductible, Comprehensive | $ | N/A | |
| ☐ | Fire-Theft and Combined Additional Cov. | | $ | N/A | |
| ☐ | N/A | | $ | N/A | |

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.

☐ Single-Interest Insurance. You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay
$ N/A       for       N/A
of coverage.

*[This area intentionally left blank.]*

RSSIMVLFLZMO 10/10/2015
Page 2 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

Electronically Filed - St. Louis County - April 16, 2021 - 08:46 AM

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ Service Contract

| | | |
|---|---|---|
| Term | | 36   months |
| Price | $ | 2,350.00 |
| Coverage | | Vehicle Protection |

☒ Gap Waiver or Gap Coverage

| | | |
|---|---|---|
| Term | | 72   months |
| Price | $ | 695.00 |
| Coverage | | Gap Coverage |

☐ N/A

| | | |
|---|---|---|
| Term | | N/A |
| Price | $ | N/A |
| Coverage | | N/A |

*Richard Saddler*                                    09/21/18

By: Richard Saddler                                    Date

N/A                                                         N/A

By:                                                          Date

N/A                                                         N/A

By:                                                          Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract.  Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25, plus any charge by the depository institution for the dishonored or returned payment.

**Governing Law and Interpretation.** This Contract is governed by the law of Missouri and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

❖  You fail to make a payment as required by this Contract.
❖  We believe the prospect of payment, performance, or the ability to realize upon the collateral is significantly impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you default on this Contract, we may exercise the remedies provided by law and this Contract after we have given you any notice and opportunity to cure your default that the law requires. Those remedies include:

❖  We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
❖  We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We are not required to make any such payments or repairs. You will repay us that amount when we tell you to do so. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
❖  We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
❖  We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
❖  We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
❖  Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ❖ You must pay this Contract even if someone else has also signed it.
- ❖ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ❖ We may release any security and you will still be obligated to pay this Contract.
- ❖ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ❖ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ❖ You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ❖ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ❖ You agree not to remove the Property from the U.S. without our prior written consent.
- ❖ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ❖ You will pay all taxes and assessments on the Property as they become due.
- ❖ You will notify us with reasonable promptness of any loss or damage to the Property.
- ❖ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide evidence of the insurance coverage required by this Contract, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

Note: If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply.   **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

Emissions Inspection Notice. If the vehicle is subject to Missouri emissions inspection and the Seller sells it to you without prior inspection and approval, you may: (1) return the Vehicle within 10 days, provided it has no more than 1,000 additional miles since the time of sale, to have the Seller repair the Vehicle and provide an emissions certificate and sticker within five working days if the Vehicle fails, upon inspection, to meet the emissions standards, or (2) enter into any mutually acceptable agreement with the Seller.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, "you" means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | | N/A |
|---|---|---|
| By: | | Date |
| Signature of Third Party Owner (NOT the Buyer) | | |

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

RSSIMVLFL2MO 10/10/2016

Page 4 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

☒ Electronic Signature Acknowledgment. You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| *Richard Saddler* | 09/21/18 |
| --- | --- |
| By: Richard Saddler | Date |

| N/A | N/A |
| --- | --- |
| By: | Date |

| N/A | N/A |
| --- | --- |
| By: | Date |

Notice to the Buyer. Do not sign this Contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Contract you sign. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the time price differential.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

Buyer

| *Richard Saddler* | 09/21/18 |
| --- | --- |
| By: Richard Saddler | Date |

| N/A | N/A |
| --- | --- |
| By: | Date |

| N/A | N/A |
| --- | --- |
| By: | Date |

Seller

| *[signature]* | 09/21/18 |
| --- | --- |
| By: CARVANA, LLC | Date |

**THIS IS A COPY**
This is a copy view of the Authoritative Copy held by the designated custodian

Assignment. This Contract and Security Agreement is assigned to

N/A

the Assignee, phone       N/A       . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

Seller

| N/A | |
| --- | --- |
| By: | Date |

Retail Installment Contract-MO.Not for use in transactions secured by a dwelling.
Bankers Systems TM VMP®
Wolters Kluwer Financial Services © 2015

RSSMVLFLZMO 10/10/2015
Page 5 of 5

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

# AFFIDAVIT

Bridgecrest Acceptance Corporation

Plaintiff:

vs.

RICHARD SADDLER

Defendant(s)

STATE OF ARIZONA          )
                          ).ss:
COUNTY OF MARICOPA        )

The undersigned states as follows:

1. I am over 18 years old and competent to make this Affidavit. I am a Custodian of Records and an employee of Plaintiff, Bridgecrest Acceptance Corporation ("Plaintiff"), and I am duly authorized to make this Affidavit.

2. Plaintiff Bridgecrest is a third party servicer of accounts originated by DriveTime Car Sales Company, LLC ("DriveTime"). DriveTime enters into Retail Installment Contracts with its customers. The Retail Installment Contracts are made in the course of DriveTime's regularly conducted business: (1) at or near the time the events they purport to describe occurred, by a person with knowledge of the acts and events; or (2) by a computer or other similar digital means, which contemporaneously records an event as it occurs.

3. Plaintiff maintains in its systems its own books and records related to customer accounts, including documents related to payment and collection history, and these books and records are made in the course of Bridgecrest's regularly conducted business activity: (1) at or near the time the events they purport to describe occurred, by a person with knowledge of the acts and events; or (2) by a computer or other similar digital means, which contemporaneously records an event as it occurs. Bridgecrest also maintains a copy of the DriveTime Retail Installment Contracts in the ordinary course of its business.

4. Because of the scope of my job responsibilities with Bridgecrest, I am familiar with the relationship between Bridgecrest and DriveTime and the manner and method by which Plaintiff creates and/or maintains its books and records, including its computer records and records that are in default, in the ordinary cause of Bridgecrest's business. The contents of this Affidavit are believed to be true and correct based upon my personal knowledge.

5. The books and records of Plaintiff show that Defendant entered into a Retail Installment Contract with DriveTime for the purpose of obtaining immediate funds with which to purchase a car and did thereafter accept or authorize the acceptance of said funds.

6. Defendant's account is serviced by Plaintiff and Defendant's payments under the Retail Installment Contract are due to Plaintiff.

7. The Defendant has failed to timely remit payment to Plaintiff in accordance with the terms of the Retail Installment Contract, and is therefore in default thereof.

Electronically Filed - St Louis County - April 15, 2021 - 08:46 AM

8. After all credits and setoffs to which Defendant is entitled. there is a total balance owing from Defendant to Plaintiff of $23,594.98.

9. Plaintiff is the current holder and/or servicer and payee of the Retail Installment Contract, and neither the Retail Installment Contract, nor any part thereof, has been assigned to any other person or entity.

10. Plaintiff's books and records show that credit has been given to Defendant for all just and lawful offsets, payments, and credits as of the date hereof, and the entire remaining balance on the Retail Installment Contract as set forth in Plaintiff's Complaint now remains due and owing.

11. Demand for payment of the balance owing was made more than thirty (30) days prior to making this Affidavit. after which the attorneys representing Plaintiff were retained for the purpose of collecting on the Retail Installment Contract referenced above.

12. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: _1/8/2021_

Affiant Name (Printed) _Michelle Warren_

Affiant Name (Signature) _Michelle Warren_

Title of Affiant _Manager Agent Bridgecrest_

Personally known to me. subscribed and sworn to before me, a notary public for the state of Arizona, County of Maricopa, this _8_ day of _January_ , 2021.

_____
Notary Public
Notary Registration Number:
My Commission Expires: _9/1/20 21_

2465319-15



TYREL GARCIA
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
September 28, 2021

Exhibit C

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI

Bridgecrest Acceptance Corporation )
)
       Plaintiff )
vs. ) Case No. 21SL-CC01705
)
Richard Saddler )
)
       Defendant. )

## MOTION FOR LEAVE TO AMEND

**COMES NOW,** Plaintiff, Bridgecrest Acceptance Corporation, by and through its undersigned attorney, and for its Motion for Leave to Amend states:

    1.    Plaintiff requests leave to file its First Amended Petition for reason that the Petition was filed as a Breach of Contract, but should have been filed as a Petition for Replevin and Money Judgment.

    2.    A true and correct copy of Plaintiff's proposed First Amended Petition is attached hereto and marked "Exhibit A".

    3.    Rule 55.33(a) authorizes a party to amend a pleading by leave of the Court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

**WHEREFORE,** Plaintiff, Bridgecrest Acceptance Corporation, prays the Court grant Plaintiff leave to file its First Amended Petition, and for such further relief as the Court deems just and proper.

BERMAN & RABIN, P.A.

Courtney M. George, #56123
cgeorge@bermanrabin.com
PO BOX 480707
Kansas City MO 64148
(913) 649-1555
ATTORNEY FOR PLAINTIFF

2465319-178

CERTIFICATE OF MAILING

I hereby certify that on this 26 day of May , 2021, a true and correct copy of the above and foregoing Motion for Leave to Amend was deposited in the U.S. mail, postage prepaid, addressed to:

Richard Saddler
413 Genoa Dr
Manchester MO 63021-6474

Courtney M. George, #56123

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI

Bridgecrest Acceptance Corporation )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )   Case No. 21SL-CC01705
                                    )
Richard Saddler                     )
413 Genoa Dr                        )
Manchester MO 63021-6474            )
                                    )
          Defendant.                )

## FIRST AMENDED PETITION FOR REPLEVIN AND MONEY JUDGMENT

COMES NOW Plaintiff, Bridgecrest Acceptance Corporation, ("Plaintiff"), by and

through undersigned counsel, and for its First Amended Petition for Replevin and Money

Judgment against Defendant, Richard Saddler ("Defendant"), states as follows:

1.      Plaintiff is a legal entity organized pursuant to the law.

2.      Defendant is believed to reside in the County of SAINT LOUIS, Missouri.

3.      Plaintiff is the entity lawfully entitled to possession of a 2015 GMC

TERRAIN, VIN 2GKFLZE35F6281225 (the "Personal Property").

4.      On or about September 21, 2018, Defendant signed a Retail Installment

Contract and Security Agreement (the "Contract") in favor of Plaintiff a copy of said Contract is

attached hereto as "Exhibit A".

5.      The Contract granted Plaintiff a security interest in the Personal Property.

6.      Defendant has not made required payments pursuant to the Contract and are in

default.

7.      As of March 24, 2019, Defendant was past due on payments totaling $527.00

as of that date.

8.      As of January 19, 2020, Defendant's principal balance due was $23,594.98 as

of that date.

Exhibit A

9.     On or about March 24, 2019, Plaintiff issued Defendant a Notice of Default and Right to Cure Letter, setting forth $527.00 as the total amount in default, and providing Defendant 20 days to cure the default.  A copy of the Right to Cure Letter is attached hereto as "Exhibit B".

10.    Defendant did not exercise [HIS/HER] right to cure within the required period.

11.    Pursuant to the above, Plaintiff is lawfully entitled to possession of the Personal Property.

12.    Defendant is indebted to Plaintiff in the amount of $23,594.98, plus interest at the rate of 9.00% from and after the date of judgment, pursuant to the Contract.

13.    The property is wrongfully detained by the Defendant.

14.    The estimated value of the property is $13,550.00.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

1.     Immediate return of the above described property to Plaintiff;

2.     Money Judgment in the amount of $23,594.98,  plus interest at the rate of 9.00% from and after the date of judgment, pursuant to the Contract.

3.     For reasonable and agreed attorney fees as provided for by the Contract.

4.     Plaintiff's allowable costs and fees incurred in bringing this action; and

5.     Any such other and further relief that this Court deems just and necessary.

Respectfully submitted this _26_ day of _May_, 2021.

BERMAN & RABIN, P.A.

Courtney M. George, #56123
cgeorge@bermanrabin.com
P.O. Box 480707
Kansas City, MO 64148
Ph: (913) 649-1555
Fax: (913) 649-2335
ATTORNEY FOR PLAINTIFF

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

MO-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary | |
|---|---|---|---|
| CARVANA, LLC | Richard Saddler | No. | ████1880 |
| 63 PIERCE RD | 701 Ridgeside Dr # L | Date | 09/21/18 |
| WINDER GA 30680-7280 | Ballwin MO 63021 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 12.64 % | $ 11,415.51 | $ 26,489.02 | $ 37,904.53 | $ 0.00 $ 37,904.53 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 527.00 | monthly beginning 10/21/18 |
| 1 | $ 487.53 | 09/21/24 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If you fail to pay your scheduled payment, in full, within 15 days of its due date, you agree to pay: 1. a late charge of $5.00, if the amount of your scheduled payment is $25.00 or less; 2. otherwise, a late charge of 5% of the amount of your scheduled payment, subject to a minimum late charge of $10.00 and a maximum late charge of $25.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year 2015 | Make GMC | Model Terrain | Style SUV | Vehicle Identification Number 2GKFLZE35F6281225 | Odometer Mileage 63770 |
|---|---|---|---|---|---|

☐ New
☒ Used
☐ Demo

Other: N/A

## Description of Trade-In

| N/A | N/A | N/A | N/A |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

## Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: _____ N/A _____ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 26,489.02 plus finance charges accruing on the unpaid balance at the rate of 12.64 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ Minimum Finance Charge. You agree to pay a minimum finance charge of $ _____ N/A _____ if you pay this Contract in full before we have earned that much in finance charges.

*Exhibit A*

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 1,652.02) | $ 23,352.02 |
| b. | Service Contract, paid to: Carvana | $ 2,350.00 |
| c. | **Cash Price (a+b)** | $ 25,702.02 |
| d. | Trade-in allowance | $ 0.00 |
| e. | Less: Amount owing, paid to (includes m): N/A | $ N/A |
| f. | Net trade-in (d-e; if negative, enter $0 here and enter the amount on line m) | $ 0.00 |
| g. | Cash payment | $ 0.00 |
| h. | Manufacturer's rebate | $ N/A |
| i. | Deferred down payment | $ N/A |
| j. | Other down payment (describe) N/A | $ N/A |
| k. | **Down Payment (f+g+h+i+j)** | $ 0.00 |
| l. | **Unpaid balance of Cash Price (c-k)** | $ 25,702.02 |
| m. | Financed trade-in balance (see line f) | $ 0.00 |
| n. | Paid to public officials, including filing fees | $ 92.00 |
| o. | Insurance premiums paid to insurance company(ies) | $ 0.00 |
| p. | Administrative Fee | $ 0.00 |

AN ADMINISTRATIVE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW BUT MAY BE CHARGED BY A DEALER. THIS ADMINISTRATIVE FEE MAY RESULT IN A PROFIT TO DEALER. NO PORTION OF THIS ADMINISTRATIVE FEE IS FOR THE DRAFTING, PREPARATION, OR COMPLETION OF DOCUMENTS OR THE PROVIDING OF LEGAL ADVICE. THIS NOTICE IS REQUIRED BY LAW.

| | | |
|---|---|---|
| q. | To: Gap Coverage | $ 695.00 |
| r. | To: N/A | $ N/A |
| s. | To: N/A | $ N/A |
| t. | To: N/A | $ N/A |
| u. | To: N/A | $ N/A |
| v. | To: N/A | $ N/A |
| w. | To: N/A | $ N/A |
| x. | To: N/A | $ N/A |
| y. | To: N/A | $ N/A |
| z. | To: N/A | $ N/A |
| aa. | **Total Other Charges/Amts Paid (m thru z)** | $ 3,137.00 |
| bb. | Prepaid Finance Charge | $ 0.00 |
| cc. | **Amount Financed (l+aa-bb)** | $ 26,489.02 |

We may retain or receive a portion of any amounts paid to others.

## Insurance Disclosures

Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single  ☐ Joint  ☐ None
Premium $ N/A     Term N/A
Insured N/A

**Credit Disability**

☐ Single  ☐ Joint  ☐ None
Premium $ N/A     Term N/A
Insured N/A

---

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A     N/A
By:              DOB

N/A     N/A
By:              DOB

N/A     N/A
By:              DOB

**You have the right to cancel credit insurance within 15 days of buying it and receive a full refund or credit for the credit insurance premium.**

Property Insurance. You must insure the Property securing this Contract. You understand that you are free to insure your Property with whatever licensed company, agent or broker you may choose; that you may do so at any time after the date of this loan; that you have not cancelled any existing insurance on your Property if you owned it before this loan; and that this loan cannot be denied you simply because you did not purchase your insurance through us. **YOU MAY NOT NEED TO PURCHASE CREDIT PROPERTY INSURANCE, AND YOU MAY HAVE OTHER INSURANCE WHICH WE WILL ACCEPT WHICH COVERS THE PROPERTY SECURING THIS LOAN. YOU SHOULD EXAMINE ANY OTHER INSURANCE WHICH YOU HAVE IN ORDER TO DETERMINE IF THIS COVERAGE IS NECESSARY.**

This premium is calculated as follows:

☐ $ N/A  Deductible, Collision Cov.  $ N/A
☐ $ N/A  Deductible, Comprehensive  $ N/A
☐ Fire-Theft and Combined Additional Cov.  $ N/A
☐ N/A  $ N/A

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless checked and indicated.**

☐ Single-Interest Insurance. You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A  for N/A of coverage.

*[This area intentionally left blank.]*

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ Service Contract

| Term | 36 | months |
|---|---|---|
| Price | $ | 2,350.00 |
| Coverage | | Vehicle Protection |

☒ Gap Waiver or Gap Coverage

| Term | 72 | months |
|---|---|---|
| Price | $ | 695.00 |
| Coverage | | Gap Coverage |

☐ N/A

| Term | | N/A |
|---|---|---|
| Price | $ | N/A |
| Coverage | | N/A |

*Richard Saddler*                    09/21/18

By: Richard Saddler                    Date

N/A                    N/A

By:                    Date

N/A                    N/A

By:                    Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $25, plus any charge by the depository institution for the dishonored or returned payment.

**Governing Law and Interpretation.** This Contract is governed by the law of Missouri and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

♦ You fail to make a payment as required by this Contract.
♦ We believe the prospect of payment, performance, or the ability to realize upon the collateral is significantly impaired.

If you default, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay reasonable attorneys' fees not in excess of 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you default on this Contract, we may exercise the remedies provided by law and this Contract after we have given you any notice and opportunity to cure your default that the law requires. These remedies include:

♦ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
♦ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We will repay us that amount when we tell you to do so. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
♦ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
♦ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
♦ We may then sell the Property and apply what we receive, as provided by law to our reasonable expenses and then toward what you owe us.
♦ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ◆ You must pay this Contract even if someone else has also signed it.
- ◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ◆ We may release any security and you will still be obligated to pay this Contract.
- ◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ◆ You will defend our interests in the Property against claims made by anyone else. You will keep your claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ◆ You agree not to remove the Property from the U.S. without our prior written consent.
- ◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ◆ You will pay all taxes and assessments on the Property as they become due.
- ◆ You will notify us with reasonable promptness of any loss or damage to the Property.
- ◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

Unless you provide evidence of the insurance coverage required by this Contract, we may purchase insurance at your expense to protect our interests in the Property. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the Property. You may later cancel any insurance purchased by us, but only after providing evidence that you have obtained insurance as required. If we purchase insurance for the Property, you will be responsible for the costs of that insurance, including the insurance premium, interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**Emissions Inspection Notice.** If the vehicle is subject to Missouri emissions inspection and the Seller sells it to you without prior inspection and approval, you may: (1) return the Vehicle within 10 days, provided it has no more than 1,000 additional miles since the time of sale, to have the Seller repair the Vehicle and provide an emissions certificate and sticker within five working days if the Vehicle fails, upon inspection, to meet the emissions standards, or (2) enter into any mutually acceptable agreement with the Seller.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| By: | Date |

Signature of Third Party Owner (NOT the Buyer)

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

HSSIMVLFCZMO 10/10/2015

Page 4 of 5

DocuSign Envelope ID: 12B2F82E-9E39-44EC-A792-753077B21742

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

☒ Electronic Signature Acknowledgment. You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (vi) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signatures

Entire Agreement. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

Richard Saddler

09/21/18

By: Richard Saddler                         Date

_____N/A_____                    ___N/A___
By:                                         Date

_____N/A_____                    ___N/A___
By:                                         Date

**Notice to the Buyer. Do not sign this Contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the Contract you sign. Under the law you have the right to pay off in advance the full amount due and to obtain a partial refund of the time price differential.**

**By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.**

Buyer

Richard Saddler

09/21/18

By: Richard Saddler                         Date

_____N/A_____                    ___N/A___
By:                                         Date

_____N/A_____                    ___N/A___
By:                                         Date

Seller

                                            09/21/18

By: CARVANA, LLC                            Date

Assignment. This Contract and Security Agreement is assigned to
__N/A__

the Assignee, phone _____N/A_____ . This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐  This Assignment is made with recourse.

Seller

__N/A__
By:                                         Date

---

Retail Installment Contract-MO Not for use in transactions secured by a dwelling.
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015                                          RSSIMVLFLZMO 10/10/2015
                                                                                  Page 5 of 5

Bridgecrest
7300 E Hampton Ave, Ste 101
Mesa, AZ 85209
877-329-9029



03-04-2019

RICHARD SADDLER                    1-  444 - 1
413 GENOA DR
MANCHESTER MO 63021-6474

## NOTICE OF RIGHT TO CURE AND INTENT TO REPOSSESS

RE: Credit Transaction     Retail Installment Contract

Account Number: ▓▓▓▓▓▓▓001
Vehicle Description:  2015,GMC,TERRAIN AWD V6 FFV
VIN:  2GKFLZE35F6281225

LAST DAY FOR PAYMENT: 03-24-2019
AMOUNT NOW DUE:  527.00

You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with the contract as though you were not late. If you do not pay by this date we may exercise our rights under the law.

If you voluntarily surrender possession of the following specified collateral, you could still owe additional money after the money received from the sale of the collateral is deducted from the total amount you owe. The collateral securing our contract is: 2015,GMC,TERRAIN AWD V6 FFV

If you are late again in making your payments, you have no right to cure.

If you have questions, please call us at the number listed above or write us at the address listed above.

Please send payment in the amount of the AMOUNT NOW DUE listed above to Bridgecrest at the address listed above or call us at the number listed above to discuss other payment options.

IMPORTANT BANKRUPTCY NOTICE: If either you, your spouse or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed above to provide information regarding the bankruptcy case(s). If you contact us and provide us with this information before the LAST DAY FOR PAYMENT listed above, we may stop the repossession process. We will continue to proceed in accordance with all applicable laws and agreements.

Sincerely,

Bridgecrest

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

RTCMO2                                    1.                         Rev. 04/2017      2

Exhibit B

# AFFIDAVIT

Bridgecrest Acceptance Corporation

Plaintiff,

vs.

## RICHARD SADDLER

Defendant(s)

STATE OF ARIZONA        )
                        ) ss.:
COUNTY OF MARICOPA     )

The undersigned states as follows:

1. I am over 18 years old and competent to make this Affidavit. I am a Custodian of Records and an employee of Plaintiff, Bridgecrest Acceptance Corporation ("Plaintiff"), and I am duly authorized to make this Affidavit.

2. Plaintiff Bridgecrest is a third party servicer of accounts originated by DriveTime Car Sales Company, LLC ("DriveTime"). DriveTime enters into Retail Installment Contracts with its customers. The Retail Installment Contracts are made in the course of DriveTime's regularly conducted business: (1) at or near the time the events they purport to describe occurred, by a person with knowledge of the acts and events; or (2) by a computer or other similar digital means, which contemporaneously records an event as it occurs.

3. Plaintiff maintains in its systems its own books and records related to customer accounts, including documents related to payment and collection history, and these books and records are made in the course of Bridgecrest's regularly conducted business activity: (1) at or near the time the events they purport to describe occurred, by a person with knowledge of the acts and events; or (2) by a computer or other similar digital means, which contemporaneously records an event as it occurs. Bridgecrest also maintains a copy of the DriveTime Retail Installment Contracts in the ordinary course of its business.

4. Because of the scope of my job responsibilities with Bridgecrest, I am familiar with the relationship between Bridgecrest and DriveTime and the manner and method by which Plaintiff creates and/or maintains its books and records, including its computer records and records that are in default, in the ordinary cause of Bridgecrest's business. The contents of this Affidavit are believed to be true and correct based upon my personal knowledge.

5. The books and records of Plaintiff show that Defendant entered into a Retail Installment Contract with DriveTime for the purpose of obtaining immediate funds with which to purchase a car and did thereafter accept or authorize the acceptance of said funds.

6. Defendant's account is serviced by Plaintiff and Defendant's payments under the Retail Installment Contract are due to Plaintiff.

7. The Defendant has failed to timely remit payment to Plaintiff in accordance with the terms of the Retail Installment Contract, and is therefore in default thereof.

8. After all credits and setoffs to which Defendant is entitled, there is a total balance owing from Defendant to Plaintiff of $23,594.98.

9. Plaintiff is the current holder and/or servicer and payee of the Retail Installment Contract, and neither the Retail Installment Contract, nor any part thereof, has been assigned to any other person or entity.

10. Plaintiff's books and records show that credit has been given to Defendant for all just and lawful offsets, payments, and credits as of the date hereof, and the entire remaining balance on the Retail Installment Contract as set forth in Plaintiff's Complaint now remains due and owing.

11. Demand for payment of the balance owing was made more than thirty (30) days prior to making this Affidavit, after which the attorneys representing Plaintiff were retained for the purpose of collecting on the Retail Installment Contract referenced above.

12. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: _1/8/2021_

Affiant Name (Printed) _Michelle Warren_

Affiant Name (Signature) _Michelle Warren_

Title of Affiant _Manager/Agent Bridgecrest_

Personally known to me, subscribed and sworn to before me, a notary public for the state of Arizona, County of Maricopa, this _8_ day of _January_, 2021.

_____
Notary Public
Notary Registration Number:
My Commission Expires: _9 / 26 / 20 21_

2465319-15



TYREL GARCIA
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
September 26, 2021

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY,

BRIDGECREST ACCEPTANCE CORPORATION

Plaintiff,

vs.

Richard Saddler

Defendant(s)

| STATE OF MO | ) |
|---|---|
| | ) ss: |
| COUNTY OF ST. LOUIS | ) |

## REPLEVIN AFFIDAVIT

Having first been duly sworn under oath. the undersigned deposes and states as follows:

1.      I am over the age of eighteen years. of sound mind. and have personal knowledge of the information and factual allegations set forth herein.

2.      Plaintiff Bridgecrest Acceptance Corporation is lawfully entitled to possession of the 2015 GMC TERRAIN, VIN  2GKFLZE35F6281225. as set forth in the Petition filed herewith.

3. Plaintiff holds a valid security interest in the 2015 GMC TERRAIN. VIN 2GKFLZE35F6281225. pursuant to a written installment contract executed by Defendant. Defendant defaulted under his/her obligation to pay Plaintiff. and despite receiving proper notice and instruction on how to cure his default. the Defendant remains in default and has not paid Plaintiff.

Upon information and belief. the 2015 GMC TERRAIN. VIN 2GKFLZE35F6281225. has an approximate value of $13,950.00.

4.      The 2015 GMC TERRAIN. VIN 2GKFLZE35F6281225. has not been seized under any legal process.

5.      Bridgecrest Acceptance Corporation is in danger of losing the property unless immediate possession is obtained or the property is otherwise secured.

6.      Under the penalty of perjury. I hereby affirm that I am qualified to execute this Replevin Affidavit on behalf of Plaintiff Meritrust Credit Union and that each of the above and foregoing statements is true and correct to the best of my knowledge and belief.

Bridgecrest Acceptance Corporation

By: _Michelle Warr_

Printed Name: _Michelle Warr_

Title: _Manager_

Subscribed and sworn to before me this _8_ day of _January_ , 2021.

_____
Notary Public

2465319-15

TYREL GARCIA
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
September 28, 2021

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI

Bridgecrest Acceptance Corporation

     Plaintiff,

vs                              Case No. 21SL-CC01705

Richard Saddler

     Defendant.

## AFFIDAVIT OF NON-MILITARY SERVICE

STATE OF KANSAS        )
                         )ss.
COUNTY OF JOHNSON    )

     I, Courtney M. George, of lawful age, affirm, on oath state that I am the Attorney for Plaintiff or Petitioner, in the above entitled case, and I make this affidavit pursuant to the provisions of the Service Members Civil Relief Act of 2003; that I have caused a careful investigation to be made to ascertain whether or not the above-named Defendants or Respondent is in the active service of the Army of the United States, the United States Navy, the United States Marine Corps, the United States Coast Guard, the United States Air Force, the National Guard or of any Public Health Service detailed by proper authority for duty with the military; and, that as a result of said investigation, I hereby state that to the best of my knowledge the Defendants or Respondent is not in any of the above-named branches of the military service nor has the Defendants or Respondent received notice of induction or notice to report for active service.

     THE AFFIANT SAYETH NOT.

                                      Courtney M. George, #56123

Signed and Affirmed to before me this ⎽⎽⎽ day of ⎽⎽⎽⎽⎽⎽⎽⎽, 2021.

                                    Notary Public

Kassandra Marie Vargas
Notary Public State of Kansas
My Appt Expires 10 01 2024

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI
ASSOCIATE CIRCUIT DIVISION

BRIDGECREST ACCEPTANCE CORP.　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　　　　)Case No. 21SL-CC01705
　　　　　　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
RICHARD SADDLER　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　　　　　　　　)

## DISMISSAL WITHOUT PREJUDICE

COMES NOW Plaintiff, BRIDGECREST ACCEPTANCE CORPORATION, by and
through its attorney and dismisses this action against Defendant, RICHARD SADDLER,
WITHOUT PREJUDICE, and at the cost of the Plaintiff.

By:/s/Courtney M. George
　　　Courtney M. George, #56123
　　　cgeorge@bermanrabin.com
　　　Daniel S. Rabin, #37315
　　　drabin@bermanrabin.com
　　　BERMAN & RABIN, P.A.
　　　P.O. Box 480707
　　　Kansas City, MO 64148
　　　Phone: (913) 649-1555
　　　ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2021, a copy of the foregoing Dismissal
without Prejudice was served via:

_x_U.S. Mail
__Fax
__Email through the court e-file system

To:

RICHARD SADDLER
413 GENOA DR
MANCHESTER MO 63021-6474

2465319-178

/s/Courtney M. George
Courtney M. George, #56123

Exhibit D

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI
ASSOCIATE CIRCUIT DIVISION

BRIDGECREST ACCEPTANCE              )
CORPORATION, an Arizona             )
Corporation,                        )
                                    )
          Plaintiff,                )
                                    )
                                    )
RICHARD SADDLER, an individual,     )
                                    )
          Defendant.                )
                                    )
and                                 )        CASE NO. 21SL-CC01705
                                    )
RICHARD SADDLER, an individual,     )
                                    )
          Third-Party Plaintiff,    )
                                    )
v.                                  )
                                    )
CARVANA, LLC, a Delaware Limited    )
Liability Company, and              )
                                    )
                                    )
ORENO HOLDINGS, LLC on behalf of    )
SILVERROCK GROUP, INC., and         )
Arizona Corporation, and            )
                                    )
DRIVE TIME AUTOMOTIVE GROUP,        )
INC., an Arizona Corporation,       )
                                    )
          Third-Party Defendants.   )

**FILED**
APR 2 5 2022
JOAN M. GILMER
CIRCUIT CLERK, ST LOUIS COUNTY

_____

## DEFENDANT'S ANSWER AND THIRD-PARTY COUNTER COMPLAINT

NOW COMES Defendant, Richard Saddler, representing himself as a Pro Se litigant,

hereby files his Answer and Counter Complaint to Plaintiff, Bridgecrest Acceptance

Corporation's Petition and states as follows:

1

I.

## GENERAL DENIAL

1. Subject to such stipulations and admissions as may hereafter be made, Defendant asserts a general denial as authorized under the rules. Defendant respectfully requests that Plaintiff be required to prove the charges and allegations against this Defendant by a preponderance of the evidence as is required by the Constitution and laws of the State of Missouri.

2. With respect to the prayer contained in the Plaintiff's Petition, Defendant denies that any of the alleged acts or omissions and denies that Plaintiff is entitled to recover any damages or any other relief.

3. Any and all allegations not specifically admitted above are generally denied.

II.

## SPECIFIC DENIAL

4. Defendant admits paragraph ONE of Plaintiffs Petition that this Court has original jurisdiction to hear this matter.

5. Defendant denies paragraph TWO of Plaintiff's Petition that Plaintiff and Defendant entered into a written contract.

6. Defendant denies paragraph THREE of Plaintiff's Petition that Plaintiff performed as agreed.

7. Defendant denies paragraph FOUR of Plaintiff's Petition that Defendant breached the contract.

8. Defendant denies paragraph FIVE of Plaintiffs Petition.

2

## III.

## DEFENSES AND AFFIRMATIVE DEFENSES

9.  By pleading the following defenses, as provided for pursuant to Missouri Rules of Civil
    Procedure, Defendant does not concede that it possesses or assumes the burden to prove
    each or any of them. Defendant maintains that Plaintiff retain the burden of proof on all
    matters necessary to state and sustain the claims asserted in their Original Petition.

## IV.

## AFFIRMATIVE DEFENSES

10. Plaintiff has failed to state a claim for which relief may be granted.

11. Plaintiffs have failed to exhaust administrative remedies for some or all of their claims.

12. Defendant denies Plaintiffs are entitled to recover any damages or other relief; in the
    alternative, upon information and belief, Plaintiffs' damage claims are barred in whole or
    part by reason of their failure to mitigate their alleged damages and/or the doctrine of
    after-acquired evidence; further, in the alternative, to the extent Plaintiffs have mitigated
    their damages, Defendant is entitled to a credit or set-off.

## V.

## RESERVATION OF RIGHTS

13. Defendant reserves the right to file an Amended Answer with the Court to plead any
    verified pleas, affirmative defenses and claims, crossclaims or third-party claims, as
    applicable, after further investigation and discovery.

## VI.

### JURY DEMAND

14. Defendant hereby requests and demands a jury trial.

## VII.

### PRAYER

15. The above answer is respectfully submitted to the Court by the Defendant, who asks that Plaintiff take nothing, that the Defendant be allowed to recover the costs which have been incurred by reason of the charges and allegations by the Plaintiff against this Defendant, and that the Court give this Defendant such other and further relief from these charges as the Court may feel that this Defendant is entitled to.

## VIII.

### DEFENDANT'S COUNTER COMPLAINT

16. Defendant/Third-Party Plaintiff Saddler (hereinafter "Third-Party-Plaintiff or "Saddler") seeks declaratory relief from and against the Third-Party Defendants, Carvana, LLC (hereinafter "Carvana"), Silverrock Group, Inc. (hereinafter "Silverrock") and Drive Time Automotive Group, Inc. (hereinafter "Drive Time") (collectively, "Third-Party Defendants").

## IX.

### PARTIES

17. Defendant/Third-Party Plaintiff Richard Saddler is an individual living and residing in the premises located at 413 Genoa Drive, Manchester, Missouri 63021.

18. Defendant/Third-Party Plaintiff Saddler seeks damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of court costs and fees.

4

19. Plaintiff, Bridgecrest Acceptance Corporation (hereinafter "Bridgecrest") is a foreign corporation organized and existing under the laws of the State of Arizona and duly licensed to do business in the State of Missouri.

20. Third-Party Defendant Carvana is a limited liability company organized under the laws of the State of Delaware.

21. Third-Party Defendant Silverrock is a corporation organized and existing under the laws of the State of Arizona.

22. Third-Party Defendant Drive Time is a corporation organized and existing under the laws of the State of Arizona.

23. Drive Time is the parent company and "spun off' Carvana, Silverrock, and Bridgecrest.

24. Drive Time is a private company that is owned by Ernest Garcia, II.

## X
### JURISDICTION AND VENUE

25. All parties admit that venue is appropriate in this district.

26. Venue is proper in this District pursuant to Missouri Rules of Civil Procedure (hereinafter "MRCP") on the grounds that a substantial part of the events or omissions giving rise to the third-party complaint occurred within Missouri.

## IX.

## GENERAL

## INFORMATION

27. Saddler has never been served in the instant case by Bridgecrest but is filing ms answer and counter complaint in order to have this matter addressed in a prompt matter without unnecessary delay.

Page 5

28. Saddler was served with Tanzeela Khan's petition *See Exhibit K*

29. Even though Saddler was aware and anticipating the service of Bridgecrest's petition as mentioned above. Bridgecrest knew before they filed the *Motion to Remand* that service to Saddler was not done, but yet still, as of today, they have not withdrawn that known false statement.

30. It was disclosed by phone to Bridgcest's counsel Daniel Rabin of law firm Berman & Rabin's staff multiple times before September 1, 2021, that Saddler was served with the wrong petition.

31. In our initial arbitration hearing on August 26, 2021, Saddler also disclosed to current opposing counsel Mr. McFarland for corporate parties and Judge Lawrence Mooney, our Arbitrator. A special process server served the wrong petition to Saddler *See Exhibit K*

32. For Bridgecrest to knowingly mislead the Court is undoubtedly sanctionable conduct by the Corporate Parties and Counsel.

33. Ernest Garcia, II was a player in the savings and loan crisis in the late 1980's and he pled guilty to felony charges of fraud in 1990; therefore, he is unable to be the CEO of a publicly traded corporation.

34. Carvana was founded in 2012 by Ernest Garcia, III, Ryan Keeton and Ben Huston. Carvana went public on or about April 28, 2017. Carvana's shares ended the day at $11.10. On or about January 24, 2020, Carvana shares were $83.11 with their highest value being $99.19 in or about December 2019.

35. Blomberg reported that Ernest Garcia, II's felony conviction was not disclosed in Carvana's Security and Exchange Commission filings according to an article in Forbes.

36. The two largest shareholders of Carvana are Ernest Garcia, II and Ernest Garcia, III, who combined own a super majority of Carvana shares which provide them with controlling

Page 6

voting rights.

37. On or about November 19, 2014, the Consumer Financial Protection Bureau (hereinafter "CFPB") took action against a "buy here, pay here" car dealer named Drive Time and fined them a civil money penalty of $8,000,000.00. *See Exhibit A.*

38. "The CFPB noted that 'at least 45 percent of Drive Time's auto installment contracts were delinquent at a given time'." *See Exhibit A.*

39. Shortly thereafter Drive Time spun off its' loan servicing division and renamed it Bridgecrest Acceptance Corporation in 2016.

40. To Saddler's belief and knowledge Bridgecrest is a finance company that exclusively services auto loan debt for Drive Time and its affiliates.

41. To Saddler's belief and knowledge Carvana is a retailer of used motor vehicles that are obtained, in part, by and through Drive Time.

42. To Saddler's belief and knowledge SilverRock is a warranty company that is referred by Carvana to presumptive purchasers of used motor vehicles from Drive Time and/or Carvana.

43. To Saddler's belief and knowledge, when a vehicle is purchased form Carvana, Carvana uses Bridgecrest to service the loans from Carvana's customers.

44. To Saddler's belief and knowledge, when a vehicle is purchased from Carvana, Carvana uses SilverRock to service and/or administer all warranties and/or GAP insurance for Carvana's customers.

45. Under the "umbrella" of the ownership and/or control of Drive Time, the purchase of a vehicle from Carvana by a consumer such as Saddler, is then financed through Bridgecrest and the warranties are provided by SilverRock.

46. On April 15, 2021, Bridgecrest electronically filed a Petition in the Circuit Court of Saint Louis County, Missouri, Circuit Court Division in Case No. 21SL-CC01705 ("Petition").

47. In the Petition, Bridgecrest alleged that Bridgecrest and Saddler entered into a written contract, without any proof of said contract.

48. In an affidavit that was attached to the Petition, Bridgecrest swears that Bridgecrest is a third-party servicer of accounts originated by Drive Time.

49. Saddler filed a prior suit against Carvana in the Circuit Court of Saint Louis, Missouri Case No. 19SL-CC05679 which Carvana removed from this Court to Federal District Court, Case No. 4:20CV105 HEA.

50. In Case No. 4:20CV105 HEA, the Court issued an Order on August 11, 2020 which granted Carvana's Motion to Compel Arbitration and Dismissed Case No. 4:20CV105 HEA. Even after the Federal Court ordered the parties to arbitrate, Saddler was sued in this instant matter Case No. 21SL-CC01705 by Bridgecrest Acceptance Corporation based upon the same facts and circumstances that were part and parcel of Saddler's complaint in the earlier case before this very Court.

51. Since August 11, 2020, additional facts have become known to Saddler and are alleged herein.

## XI.

## STATEMENT OF THE FACTS

52. Desiring to purchase a used vehicle, Saddler utilized Carvana's website to search for and locate a suitable vehicle.

53. After locating a vehicle, Saddler applied for financing through Carvana's related party

**Page 8**

finance company, Bridgecrest.

54. Bridgecrest approved Saddler to finance $26,489.02 which included the price of the vehicle, TAVT tax, license fee, vehicle protection and GAP coverage, at an interest rate of 12.61%.

55. Vehicle protection and GAP coverage was administered by SilverRock at Carvana's direction and control.

56. On or about September 21, 2018, Carvana delivered a 2015 GMC Terrain Denali ("Denali") the second of two automobiles to Saddler at his residence in St. Louis County, Missouri, and upon delivery Saddler executed final documents acknowledging and accepting delivery. However, at that time Saddler was not aware that Carvana was in violation of Missouri State law R.S. Mo.§ 301.570 by not a being

licensed dealer that could legally sell motor vehicles in the State of Missouri. *See Exhibit L.*

57. These documents included a retail installment contract and security agreement, Carvana Care Agreement, credit reporting notice, odometer disclosure statement, and a GAP Addendum to retail installment contract.

58. On the first page of the buyer's guide that was provided to Saddler at the time of purchase it states a service contract is available at an additional charge. *See Exhibit B.*

59. In the Gap Addendum to Retail Installment Contract, the creditor is listed as Carvana with a Tempe Arizona address. SilverRock is listed as the administrator of the GAP Addendum. *See Exhibit C.*

60. In the Retail Installment Contract and Security Agreement, Carvana, LLC of Winder, Georgia is listed as the Seller. *See Exhibit D.*

Page 9

61. The Retail Installment Contract provides a security interest to Carvana, LLC of Winder, Georgia. *See Exhibit D.*

62. Pursuant to the Retail Installment Contract, Carvana is both the Seller and the Lender for the vehicle purchased by Saddler.

63. The Denali that was purchased by Saddler was located in the State of Georgia and was delivered to Saddler in the State of Missouri.

64. Upon receipt of the Denali, it contained a temporary tag from the State of Georgia, which is a violation of Georgia law.

65. On the date of purchase of the Denali, Carvana was not licensed to sell motor vehicles in the State of Florida.

66. Neither at the time of the sale or delivery of the purchased vehicle, nor any time subsequent did Carvana provide Saddler title or an assignment of a Certificate of Ownership to the purchase vehicle as required by Missouri law.

67. Approximately forty-five days after his purchase, and prior to the expiration of the temporary registration tags, Saddler was required to obtain at his expense and inconvenience the first of what would turn into several emissions inspections with odometer readings. Carvana told Saddler that he needed to take these actions and email the emissions test results to Carvana ostensibly so that Carvana could provide

   Saddler his vehicle title or an assignment of Certificate of Ownership and registered license plates. Carvana told Saddler that Carvana would cover the expense of obtaining his emissions test.

68. Saddler repeatedly requested that Carvana sign over said title, place Bridgecrest as lienholder.

69. Despite providing a passing emissions test result via Fed.Ex and email as directed by Carvana, Saddler was informed that Carvana's processing company was unable to process the title and registration and requested original emission inspection and odometer readings issued by the State of Missouri and not the "copy" provided by mail or email.

70. Saddler repeatedly requested the title and registration for the vehicle he purchased.

71. The Retail Installment Contract and Security Agreement required Saddler to pay a license and title fee. *See Exhibit D.*

72. Saddler was making all required payments to Bridgecrest even though he was having ownership registration problems.

73. In April of 2018, Saddler began receiving emails from Carvana and Bridgecrest threatening repossession of the vehicle Plaintiff purchased to cover-up their behavior. *See Exhibit E.*

74. In April, Carvana then began to create additional items needed unrelated to emissions; but, Saddler immediately complied. *See Exhibit F.*

75. As a further consequence of Saddler's registration problems, he has been stopped repeatedly by police for driving without proper registered license plates. Saddler feels fearful for his and his family's safety because of potential ramifications from having to confront a hostile police officer due to unregistered license plates.

76. Beginning in approximately September of 2018 until approximately September of 2019, Saddler made all monthly payments to Bridgecrest in the amount of $527.00.

77. On October 14, 2019, Saddler made a payment to Bridgecrest which Bridgecrest stated made his account with them current. *See Exhibit G.* Saddler has in his possession the

recorded call from Bridgecrest/Plaintiff.

78. Saddler made his next payment to Bridgecrest on or before November 26, 2019, which was the due date for said payment.

79. Bridgecrest refused to accept and/or returned all payments made after October 14, 2019 and continues to do so.

80. SilverRock informed Saddler that they would no longer honor the service agreement because Carvana allegedly cancelled the service agreement.

81. Saddler has additionally suffered loss of time, inconvenience, annoyance, and embarrassment resulting from his vehicle purchase and Carvana's failure to assign Saddler a Certificate of Ownership or title pursuant thereto and by Carvana's further and ongoing failure to remedy their omission of failing to assign him a Certificate of Ownership.

82. Saddler has also incurred thousands of dollars in rental car expenses due to alleged conduct referenced herein.

83. The allegations contained herein establish that Drive Time asserted control over Carvana, Bridgecrest and SilverRock.

84. The actions of Carvana, Bridgecrest, SilverRock and Drive Time as described herein were outrageous because of their combined conscious disregard of their contractual and statutory obligations or otherwise reckless indifference to Saddler's rights.

85. In the General Court of Justice Superior Court Division of Wake County, North Carolina, File No. 21-CVS-8116, Carvana entered into a settlement agreement where their retail license to sell automobiles in the State of North Carolina was suspended for 180 days, effective on August 2, 2021. *See Exhibit H.* This settlement agreement was

in part due to Carvana's failure to timely deliver title work which is similar to the facts alleged above by Saddler.

### COUNT I-BREACH OF CONTRACT
### AS TO CARVANA, BRIDGECREST AND SILVERROCK

86. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

87. On or about September 21, 2018, Saddler entered into a contract ("Contract") with Carvana for the purchase of a used vehicle. *See Exhibit I.* The Contract was executed in St. Louis County, Missouri. The Contract names Carvana as "Dealer" for the sale of the subject vehicle.

88. In addition, on or around September 21, 2018, Saddler entered into a Retail Installment Contract and Security Agreement ("Finance Agreement") with Bridgecrest for the financing of the Denali. *See Exhibit D.*

89. Further, on or around September 21, 2018, Saddler entered into a Warranty Agreement with SilverRock. *See Exhibit J.*

90. The Contract and Missouri State law RS. Mo. § 301.210 required Carvana, among other things, to provide Saddler with title to the vehicle by assigning him a Certificate of Ownership upon performance by Carvana of his contractual obligations.

91. Saddler was never provided a Certificate of Ownership by Carvana at the time of vehicle delivery as required by Missouri law and which is necessary to register his purchased vehicle and/or within the time period as required by laws of the State of Georgia.

92. Saddler never received any evidence of proof of title to the Denali; therefore, Bridgecrest could not attach any security interest to the Denali.

93. Saddler performed fully in accordance with the Contract paying Bridgecrest each and

Page 13

every payment in the correct amount as it became due until approximately September 2019.

94. Carvana's failure to provide Saddler documents necessary to register his purchased vehicle constitutes not only a breach of Contract itself; but, also a breach of the implied covenant of good faith and fair dealing imposed upon every contract in Missouri.

95. Carvana's failure to provide Bridgecrest with any proof of ownership and/or title to the Denali requires the Finance Agreement and Warranty to have no legal effect.

96. As a result of the foregoing breaches of Contract, all Corporate parties have caused Saddler to suffer financial damages.

97. Accordingly, Saddler is entitled to an award of compensatory damaged in an amount to be determined at trial, as well as an award of punitive damages and attorney's fees, costs, and pre- and post-judgment interest.

## COUNT II-STATUTORY FRAUD
### R.S. Mo. §§ 301.210 and 301.570 AS TO CARVANA

98. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

99. R.S. Mo. § 301.210, provides any sale of a motor vehicle without transfer of title is fraudulent.

100.　　Carvana sold, or purportedly sold, a vehicle to Saddler without transferring title of the vehicle by assignment of a Certificate of Ownership as required by Missouri Statute R.S. Mo. § 301.210, and as such, the sale was fraudulent and void as a matter of law.

101.　　Carvana was repeatedly put on notice by Saddler, in addition to being notified by the Missouri State Attorney General, of the fraudulent nature of the vehicle sale.

102.　　Despite being aware of their failure to transfer title by assignment of a Certificate of

Page 14

Ownership and by thereafter refusing to remedy same, Carvana has caused Saddler to suffer financial damages.

103.     R.S. Mo. § 301.570, provides sale of six or more motor vehicles in a year without a license is prohibited ...

104.     At the time in which Carvana attempted to sell Saddler the Denali, Carvana was not a licensed dealer as required by Missouri law.

105.     Accordingly, Saddler is entitled to an award of compensatory damaged in an amount to be determined at trial, as well as an award of punitive damages and attorney's fees, costs, and pre- and post-judgment interest.

### COUNT III - CIVIL REMEDIES, ATTORNEY'S FEES AND PUNITIVE DAMAGES
### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") - R.S. Mo.§§ 407.020 and 407.025
### AS TO CARVANA, BRIDGECREST AND SILVERROCK

106.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

107.     As herein alleged Carvana used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and/or the concealment, suppression, or omissions of material fact in connection with the sale of the Denali to Saddler, to wit: Carvana misrepresented to Saddler that Carvana was prepared to assign a Certificate of Ownership upon Saddler's performance under the Contract; Carvana misrepresented to Saddler that Carvana would obtain an ownership interest in the Denali if he performed as required under the contract; but, despite Plaintiffs performance he has acquired no interests whatsoever in the Denali; and Carvana, and/or Bridgecrest, and/or SilverRock charged Saddler excessive fees for services and

Page 15

products of little or no value.

108.     Saddler's purchase of the Denali from Carvana was made primarily for personal, family or household purposes.

109.     Saddler purchased the Denali for personal, family or household purposes and suffered an ascertainable loss of money or property as a result of the use or employment by Carvana of methods, acts or practices declared unlawful by R.S. Mos § 407.020.

110.     Saddler has been damaged by Carvana, and/or Bridgecrest, and/or SilverRock's actions in an amount to be proven at trial for which he claims compensatory damages against Defendants.

111.     Carvana, and/or Bridgecrest, and/or SilverRock's conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Saddler's rights.

112.     Saddler is entitled to an award of punitive damages in an amount no less than $2,500.00 and reasonable attorney fees and legal expenses of this litigation, and interest against Carvana, and/or Bridgecrest, and/or SilverRock.

### COUNT IV - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO DRIVE TIME, CARVANA, BRIDGECREST AND SILVERROCK

113.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

114.     Carvana represented to Saddler they were able to legally sell the Denali to Saddler.

115.     Despite Saddler performing as required under the Contract, Carvana failed to

Page 16

perform as required by law and as set forth *supra* by delivering the Denali without providing Saddler an assignment of a Certificate of Ownership.

116.     Carvana is a sophisticated and experienced nationwide and also a licensed Missouri auto dealership with resources enabling it to be fully knowledgeable regarding their responsibility to assign a Certificate of Ownership at the time of delivery in Missouri of an automobile sold.

117.     This is especially true due to Carvana being a subsidiary of Drive Time.

118.     Despite Carvana's knowledge as imputed by and through Drive Time, of their legal duty to assign ownership at the time of deliver, Carvana shifted its statutory burden to provide and assignment of ownership to Saddler by requiring him to obtain his own emissions certification prior to Carvana assigning Saddler his Certificate of Ownership.

119.     As a result of Carvana shifting its statutory responsibility to Saddler by failing to assign a Certificate of Ownership and thereafter insisting Saddler obtain his own emissions certification prior to Carvana's assignment, Saddler has been denied the benefit of his bargained for exchange as represented by the parties' contract because he has no ownership interest m the Denali after more than a year of monthly payments.

120.     As a direct result of Carvana's breach of the covenant of good faith and fair dealing, Saddler has, or will, sustain damages in an amount to be proven at trial.

## COUNT V – CONSTRUCTIVE FRAUD OR NEGLIGENT MISREPRESENTATION AS TO CARVANA

121.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

Page 17

122.     Carvana, in the course of their business as a used auto dealership, failed to disclose that they were not an approved auto dealer in the state of Missouri. This intentional conduct violates Missouri State law R.S. Mo. § 301.570 and was done for Carvana's pecuniary gain. In addition, Carvana purposefully misled and gave false information to Saddler about proper title information, which has caused the delay of the purchase of the Denali as herein alleged, upon which Saddler reasonably relied to his detriment in entering into the purchase of the Denali.

123.     In furnishing such false information Carvana failed to exercise reasonable care or competence in obtaining or communicating such information to Saddler.

124.     As a direst and proximate result of Carvana's negligent misrepresentations, Saddler has suffered, and will continue to suffer damages, including pecuniary losses in an amount to be determined at trial.

125.     Saddler has been damages by Carvana's actions for which he claims compensatory damages against Carvana.

## COUNT VI- UNJUST ENRICHMENT
## AS TO CARVANA, BRIDGECREST AND SILVERROCK

126.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

127.     Carvana, and/or Bridgecrest, and/or SilverRock have knowingly benefited at Plaintiff's expense by reason of their receipt of monthly payments with interest and fees made toward the purchase price for the Denali.

128.     Allowing Carvana, and/or Bridgecrest, and/or SilverRock to retain such benefit without assignment to Saddler of a Certificate of Ownership and a judgment for

his damages would be unjust under the circumstances.

129. Carvana, and/or Bridgecrest, and/or SilverRock's conduct was malicious, fraudulent, oppressive and/or recklessly committed with wanton disregard of Saddler's rights.

130. Saddler has been damages by Carvana, and/or Bridgecrest, and/or SilverRock's actions in an amount to be proven at trial and he hereby tenders the return of the Denali for which he claims compensatory and punitive damages against Carvana, and/or Bridgecrest, and/or SilverRock.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DRIVE TIME, CARVANA, BRIDGECREST AND SILVERROCK

131. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

132. Carvana, and/or Bridgecrest, and/or SilverRock's actions were the direct and proximate cause of emotional distress suffered by Saddler.

133. Carvana, and/or Bridgecrest, and/or SilverRock had a duty to avoid engaging m conduct and/or actions and/or omissions that would unnecessarily and unjustifiably cause emotional stress to Saddler.

134. Carvana, and/or Bridgecrest, and/or SilverRock breached their duty.

135. Carvana, and/or Bridgecrest, and/or SilverRock was negligent in causing Saddler's emotional distress in that Carvana, and/or Bridgecrest, and/or SilverRock realized or should have realized with the foresight exercised by a reasonable person that their conduct and/or actions and/or omissions involved an unreasonable risk of causing Saddler emotional distress.

136.     Furthermore, the actions of Carvana, and/or Bridgecrest, and/or SilverRock are outrageous and evidence a complete indifference and conscious disregard for the rights of others, Saddler is entitled to punitive damages.

## COUNT VIII – RACKETEER INFLUENCED AND CORRUPT

## ORGANIZATIONS (RICO)

### AS TO DRIVE TIME, CARVANA, BRIDGECREST AND SILVERROCK

137.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein,

138.     The Defendants participated in a 'pattern of racketeering activity;'

139.     This pattern consists of at least two acts of racketeering that were committed within ten (10) years of each other.

140.     The financial and ownership of and to the Defendants establish that they are an 'enterprise'

141.     The enterprise engages in or affects interstate commerce.

142.     As a result, Saddler suffered an injury to his business or property.

143.     Saddler's resulted from a pattern of racketeering activity by the Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Defendant prays for relief as follows:

a.     for the first count for Breach of Contract, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract, requiring Corporate Parties  assign to Saddler a Certificate of Ownership or in the alternative rescission of the contract and an award of damages; or

Page 20

b.      for the second count for Statutory Fraud, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Corporate Parties assign to Saddler a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in
lieu of "a" or "b";

c.      for the third count for Violation of the MPA, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Corporate Parties assign to Saddler a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a", "b", or "c";

d.      for the fourth count for Breach of the Covenant of Good Faith and Fair Dealing, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Corporate Parties assign to Saddler a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a","b", "c", or "d";

e.      for the fifth count for Constructive Fraud/Negligent Misrepresentation, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Corporate Parties assign to Saddler a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a", "b", "c", "d", or "e";

f.      for the sixth count for Unjust Enrichment, an award of compensatory damages in an amount of at least $75,000.00 as determined at trial, and

g.      for the seventh count for Negligent Infliction of Emotional Distress, an award of compensatory damages and punitive damages in an amount to be determined at trial, and

h.      for the eighth count for RICO, an award of compensatory damages and punitive damages in an amount to be determined at trial, and

i.      an award of all costs associated herein including and not limited to attorney's fees, and pre- and post-judgment interest, and

ı.      all other and further relief as the Court may deem just and proper.

## JURY DEMAND

Defendant/Third-Party Plaintiff requests a jury trial.

Page 21

Respectfully submitted,

**Richard Saddler,** *Pro Se*
413 Genoa Drive
Manchester, Missouri 63021
Telephone: (310) 428-2110

Email:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Process Server and or emailed, and/or certified US Postal Service to the registered agents or Representatives listed below on this 22nd day of April 2022, to the following:

**Richard Saddler,** *Pro Se*
413 Genoa Drive
Manchester, Missouri 63021
Telephone: (310) 428-2110

**Page 23**

In the
# CIRCUIT COURT
## of St. Louis County, Missouri

Bridgecrest
Plaintiff(s)

vs.

Richard Saddler
Defendant(s)

April 25 2022
Date

21SL-CC01705
Case Number

12
Division

For File Stamp Only

# FILED

APR 2 5 2022

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

Order granting Leave of Saddlers
Ammended ~~Ret~~ Answer and Counter-Complaint

**SO ORDERED**

Judge

**ENTERED:** _____
(Date)

CCOPR47-WS  Rev. 02/14

M Thomas McFarland          TN#33433
Attorney                    Bar No.

15x Third Ave, S. Ste 1800 Nashville, TN
Address                                  37201

615-244-4994
Phone No.                   Fax No.

Richard Saddler
Attorney                    Bar No.

413 Genon Dr  Manchester Mo
Address                          63021

314-428-2190
Phone No.                   Fax No.

Exhibit E

# IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY, MISSOURI
## ASSOCIATE CIRCUIT DIVISION

BRIDGECREST                          )
ACCEPTANCE CORPORATION,              )
an Arizona Corporation,              )
                                     )
    Plaintiff,   )
                                     )
v.                                   )   **CASE NO. 21SL-CC01705**
                                     )
  RICHARD SADDLER, an         )
individual,                          )
                                     )
    Defendant,   )
                                     )
and                                  )
                                     )
RICHARD SADDLER, an                  )
Individual,                          )
                                     )
    Third Party Plaintiff,   )
                                     )
v.                                   )
                                     )
CARVANA, LLC, a Delaware             )
Limited Liability Company, and       )
                                     )
SILVERROCK AUTOMOTIVE                )
INC., an Arizona Corporation, and    )
                                     )
DRIVE TIME AUTOMOTIVE                )
GROUP, INC., an Arizona              )
Corporation,                         )
                                     )
    Third Party Defendant(s).   )

**FILED**

JAN 0 9 2023

JOAN M. GILMER
CIRCUIT CLERK, ST LOUIS COUNTY

1

## <u>MOTION FOR SANCTION AGAINST ALL OPPOSING PARTIES AND</u>
## <u>THEIR LEGAL COUNSEL</u>

NOW COMES Defendant/Third-Party Plaintiff, Richard Saddler ("Saddler"),

representing himself as a Pro Se litigant, hereby files his Motion for Sanctions against all

Opposing Parties and their Legal Counsel pursuant to Missouri Supreme Court Rule 55.03, and

states as follows:

**BRIEF BASIS OF REQUEST FOR SANCTIONS**

1.     The facts and procedure that is stated below show that this case was filed for an

improper and/or fraudulent purpose.

2.     The actions of all opposing parties, by and through their legal counsel, have abused

the legal process in filing this case against Saddler.

3.     Their actions have caused the Circuit Court of St. Louis County, the Judge and their

office staff, and the Clerk's office to expend numerous hours and financial resources

based upon the desire to punish a pro se litigant for being a whistleblower against

Carvana, Bridgecrest, DriveTime and SilverRock.

4.     Since Saddler's initial filing against Carvana in the Circuit Court of St. Louis

Missouri, case number 19SL-CC05679, the floodgates have opened with filings

throughout numerous state jurisdictions across the country.

5.     Saddler is requesting at minimum, that this Court exercise its own initiative to enter

an order describing the specific conduct that violates Rule 55.03(c) and sanction all

Opposing Parties and their Legal Counsel in an appropriate manner.

2

## I. BACKGROUND

6.  Saddler purchased a 2015 GMC Terrain Denali (the "Vehicle") from Carvana, which was delivered on September 21, 2018.

7.  Saddler made his monthly payments from the date of delivery on September 21, 2018 through October 2019, both online and at a DriveTime location in South County, St. Louis.  In October 2019, a representative from Bridgecrest informed Saddler that his account was current.  After Saddler sent the payment for November 2019, however, Bridgecrest returned that payment and blocked his ability to pay his bill online.

8.  Saddler had filed a prior suit against Carvana in the Circuit Court of St. Louis Missouri, case number 19SL-CC01864 and case number 19SL-CC05679.  Carvana removed these cases to the United States District Court, case number 4:20CV105 HEA, wherein the Court issued an Order on August 11, 2020 granting Carvana's Motion to Compel Arbitration.  Such case was subsequently dismissed.

9.  Bridgecrest filed the instant matter against Saddler on April 15, 2021 for a Breach of a Retail Installment Agreement.

10. To the best of Saddler's belief and knowledge, Carvana, Bridgecrest, DriveTime and SilverRock are all owned by the same people and/or entities.  Ernest Garcia II is the owner of DriveTime and largest shareholder of Carvana, owning 44.46% of the shares as of June 13, 2022.  His son, Ernest Garcia III, is the CEO of Carvana.  These two individuals co-founded Carvana and own a supermajority of Carvana shares of stock. They also own Bridgecrest and SilverRock.

11. Each of these entities is represented by the same legal counsel(s) in the cases involving Saddler.

## II. IMPROPER AND/OR FRAUDUALENT BASIS

12.   In the instant case, Bridgecrest filed suit against Sadder, alleging, by affidavit, that
DriveTime owned the Vehicle. *(Exhibit A)*

13.   Based upon Bridgecrest's filing, Saddler filed a Motion to Remove to the U.S.
District Court, case number 4:21-cv-01096-JCH.

14.   In response, Bridgecrest filed a Motion to Remand (Exhibit B, p 4, para 1 of Memo).
In such motion, Bridgecrest admitted that there was an improper basis to file the
instant matter, wherein it stated that "After this court compelled Saddler's claims to
arbitration, Saddler failed to take any steps to institute arbitration proceedings as
provided for in the relevant Arbitration Agreement, and, eventually, Bridgecrest
instituted the instant action in Missouri state proceedings...."

15.   Bridgecrest knew arbitration was scheduled in this matter as both Bridgecrest and
Carvana are represented by the same counsel.

16.   After remand was granted in open court, Bridgecrest's counsel informed this Court
that it filed this action against Saddler in error, as opposed to what it claimed in
Federal District Court.  So this was the second contradictory explanation, made by
Bridgecrest to mislead this Court.

17.   On May 26, 2021, Bridgecrest mailed a copy of a Motion for Leave to Amend and
attached as an Exhibit was the First Amended Petition for Replevin and Money
Judgment. *(Exhibit C)*

18.   Exhibit C shows that Bridgecrest knew that it did not file the suit in error, which is
especially true given that all parties have been and still are represented by the same
legal counsel.

4

19. On November 1, 2022, the Arbitrator held a full hearing between the parties.

20. At the hearing, Carvana testified that Carvana owned the Vehicle and that the Vehicle is the property of Carvana. Such allegation is evidenced by the Post Arbitration Hearing Memorandum, wherein Attorney McFarland argues that Carvana has a security interest in the Vehicle that Saddler purchased from Carvana. *(Exhibit D, p. 9)*

21. In Exhibit D at page 12, Attorney McFarland requests that the Arbitrator dismiss DriveTime from the Arbitration as being a non-party.

22. As stated above, however, Bridgecrest already claimed that DriveTime owns the Vehicle. *(Exhibit A)*

23. On several occasions, Bridgecrest, through their counsel, Attorney Thomas McFarland, has made different explanations as to why it filed this lawsuit against Saddler. Each of these different explanations conflict for the purpose of his client depending on the day and the client.

24. These explanations show not only that Bridgecrest, through their counsel – Thomas McFarland, filed the case in retaliation against Saddler, but also to commit fraud against the Court and our legal system.

25. As stated above, Bridgecrest pleaded in a United States District Court that "After this court compelled Saddler's claims to arbitration, Saddler failed to take any steps to institute arbitration proceedings as provided for in the relevant Arbitration Agreement, *and, eventually, Bridgecrest instituted the instant action in Missouri state proceedings . . ." (Exhibit B, p 4, para 1 of Memo)*

5

26.     The above-referenced statement evidences that Bridgecrest *had absolute knowledge that the matters contained in its lawsuit had already been ordered to arbitration* by a Federal District Court.

27.     From the statement in Exhibit B, it is obvious that Bridgecrest, through Council, filed the instant matter for an improper purpose.

28.     As stated above, after remand was granted in open Court, Attorney McFarland informed this Court that they filed their action against Saddler in error.

29.     Exhibit C[1] shows, however, that Council intended to file an Amended Complaint on behalf of Bridgecrest. Council actually made no attempt to file these pleadings with the court; however, Council sent me a copy of the pleadings and never actually filed such pleadings.

30.     The original petition that Council filed with the court and the amended petition which was never filed with the Court still affirmatively assert that DriveTime was the owner of the Vehicle.

31.     Not only have the filings stated that DriveTime owns the Vehicle, but preparing these pleadings with this false information and not filing the amended pleadings in court is evidence of the fraud that Defendants and Attorney McFarland are attempting to perpetrate on this court.

32.     Between what they have stated in pleadings and testified to in arbitration, this Court can see there is a conflict as to the statements regarding who presently owns the Vehicle -- Carvana or DriveTime.

---

[1] Saddler would note that after serving Saddler with a copy of Exhibit C, Attorney McFarland failed to file this pleading with the Court.

33.    Since Attorney McFarland represents each and every opposing party, it is obvious that each party had actual or constructive knowledge that the Federal case against Carvana had been ordered to arbitration and the case was dismissed. However, Attorney McFarland still wrongfully filed suit in the present matter on behalf of Bridgecrest.

34.    The facts establish that the Bridgecrest filing was for an improper purpose, thus perpetrating a fraud on the Court.

## III. OTHER JURISDICTIONS

35.    The bad and fraudulent acts by Defendants, as alleged in this motion, are not limited to Saddler or to this case. Indeed, Defendants have been sued across the country to additional bad and fraudulent acts.

36.    In the United States District Court for the Eastern District of Pennsylvania, case number 5:21-cv-05400-EGS, an "Amended Complaint – Class Action" was filed on January 13, 2022. *(Exhibit G)* This suit alleges that Carvana has done acts that are the same and/or similar to what Saddler has alleges. *(Exhibit E, Section I, Page 3 & 4)* Judge Edward Smith *denied* Carvana's motion to Compel Arbitration and Motion to Dismiss Plaintiff's Petition. *(Exhibit F)*

37.    All of Exhibit E details twenty-six (26) individuals who have suffered the same issues as Saddler in this case.

38.    In the facts alleged in that case, some of the individuals were provided with temporary tags issued from up four (4) different US states.

39.    In Exhibit E, it is alleged that "Carvana's failure to timely register cars as it promised and received money to do – sometimes for a period exceeding two (2) years - causes

7

consumers to be questioned and sometimes arrested by law enforcement while driving the temporarily registered cars." *(Exhibit G, p 1)* The Complaint states, "Rather than correct its routine business practice when confronted by its consumer customers, Carvana has resorted to a myriad of dubious excuses for its dilatory conduct including blaming COVID and administrative logjams caused by state departments of motor vehicle administration and its third-party vendors to whom Carvana sub-contracts the registration process post-sale." *(Exhibit G p 1-2)*

40. The North Carolina Department of Motor Vehicles (NCDMV) also sued Carvana, claiming that Carvana failed to deliver titles to the department, sold a motor vehicle without a state inspection, and issued out-of-state temporary tags/plates for a vehicle sold to a person in North Carolina. On August 2, 2021, NCDMV and Carvana agreed to a settlement whereby Carvana's North Carolina Dealers License was revoked for a period of 180 days.

41. The State of Florida also filed an administrative complaint, citing Carvana's Jacksonville location and Carvana's CEO, Earnest C. Garcia III, for failing to transfer titles within 30 days, as Florida law requires. The administrative complaint named twelve Florida consumers who had been impacted by Carvana's failure to timely transfer titles. In September 2021, CARVANA was ordered to pay a $6,000 fine.

42. In another suit, in August 2021, the State of California and Carvana settled a lawsuit that had been filed in Los Angeles County, California, and Carvana agreed to pay a fine of $850,000 for operating in California without a dealer's or transporter's license. Carvana had been selling cars to California consumers since 2015 but did not obtain a dealer's license until May 2019; beginning in September 2017, Carvana delivered

numerous cars to California customer using its own delivery vehicles but had no transporter's license.

43.     In another suit, in May 2021, the State of Michigan fined Carvana $2,500 for seven violations of state rules for vehicle dealers, including improperly issuing temporary registrations. Carvana also agreed to18 months' probation, during which the state can suspend or revoke their license to sell cars if it fails to comply with Michigan law.

44.     In addition, in October 2021, the State of Texas fined Carvana for more than $10,000 regarding titling and other documentation issues.

45.     Defendants have a history of fraudulent behavior.

## IV. LAW AND ARGUMENT

46.     Missouri Supreme Court Rule 55.03 provides in part that:

(c) **Representation to the Court.** By presenting and maintaining a claim, defense, request, demand, objection, contention, or argument in a pleading, motion, or other paper filed with or submitted to the court, an attorney or party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:
(1) The claim, defense, request, demand, objection, contention, or argument is not presented or maintained for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) The claims, defenses, and other legal contentions therein are warranted existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law

(d) **Sanctions.** If after notice and a reasonable opportunity to respond the court finds that Rule 55.03(c) has been violated, the court, subject to the conditions below, may impose an appropriate sanction upon the lawyers, law firms, or parties that have committed or are responsible for the violation.

(1) How Initiated.
...
(B) On Court's Initiative. and directing a lawyer, law firm or party to withdraw or correct the questioned claim, defense, request, demand, objection, contention or argument or to show cause why it has not violated the rule with respect thereto.

47.     In <u>State Ex Rel. Accurate Const. v. Quillen,</u> 809 SW 2d 437, 440 (Mo.App.E.D.

1991), the Court discussed the Court electing to consider, on their own initiative,

sanctions under Rule 55.03 stating that "Under Rule 55.03, there are basically three

types of submitted papers which warrant sanctions: factually frivolous (not "well

grounded in fact"); legally frivolous (not "warranted by existing law or a good faith

argument for the extension, modification, or reversal of existing law"); and papers

"interposed for any improper purpose." *See Business Guides v. Chromatic Com.*

*Enterprises,* 892 F.2d 802, 808 (9th Cir.1989). Rule 55.03 also requires that a

"reasonable" prefiling inquiry be conducted into the law and facts. The rule imposes

an *objective* standard of conduct. *Id.*" The papers submitted by Defendants show that

factually frivolous and submitted for an improper purpose.

48.     In <u>Camden v. Matthews,</u> 306 SW 3d 680, 682-3 (Mo.App.S.D. 2010), the Court

affirmed the trial court's order granting sanctions where the defendants had filed a

motion to dismiss the plaintiffs' claims. While the motion was still pending, plaintiff

filed a voluntary dismissal and then four days later re-filed the same action against the

same defendants. The court allowed sanctions, as it was clear the plaintiff was

fraudulent wasting the court's time and attempting to circumvent the law and rules of

court.

49.     The facts here are similar to <u>Camden</u> in that Saddler filed a case against Carvana,

which was referred to Arbitration and dismissed. Then, because Bridgecrest, which is

a separate entity controlled by Carvana and DriveTime, believed that Saddler was

"dragging his feet" with respect to Arbitration, Bridgecrest filed this case. The filing

of this case can be seen as nothing except retaliatory, just as admitted by counsel in

the filing, previously quoted.

50. As the court allowed sanctions in <u>Camden</u>, sanctions should be allowed here as well.

Defendants are merely attempting to fraudulent waste the court's time and trying to

circumvent the law and rules of court. Defendants knew the lawsuit was not filed in

error. Defendants are simply attempting to harass Saddler and circumvent the rules,

just as they try to do in every other jurisdiction in which they are sued. Defendants

show a history and repeated fraudulent behavior, and they should not be able to get

away with such a blatant disregard of the rules in Missouri or the rules of court.

## III. CONCLUSION

Therefore, this Court should order as follows:

a) Grant Sanctions pursuant to Missouri Supreme Court Rule 55.03 at minimum on this

Court's own initiative or based on supported facts and conduct here in.

b) Order sanctions as follows: Strike Bridgecrest's pleadings with prejudice in the

instant matter and award Saddler his costs in defending this matter to be determined,

and

c) Any other relief that this Court deems necessary.

Respectfully submitted,

Richard Saddler,
*Pro Se*
413 Genoa Drive
Manchester, MO 63021
Cell: 310-428-2110

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email, to all Corporate Parties Council on this 9th day of January 2023.

RICHARD SADDLER
*Pro Se*
413 Genoa Drive
Manchester, MO 63021
Cell: 310-428-2110

12



NEWS    WEATHER    KPRC 2+    INVESTIGATES    TRAFFIC    SPORTS    DISCOVER    HOUSTON LIFE    NEWSLETTERS

NEWS    WEATHER    KPRC 2+    INVESTIGATES    TRAFFIC ·    SPORTS    DISCOVER    HOUSTON LIFE    NEWSLETTERS

*Exhibit F*

KPRC 2 News Today at 7 a.m.
This hour of KPRC 2 News Today delivers news, weather, and traffic along with the KPRC 2+ livestream.

2 river flood warnings in effect for 3 counties in the area
See the complete list

BRIE JACKSON
NBC NEWS

LIVE                                                                                    HIDE

**LOCAL NEWS**

# Car dealer takes vehicle back more than a year after customer paid for it

KPRC 2 Investigates odometer discrepancy

**Amy Davis**, Investigative Reporter

Published: **May 1, 2023 at 7:28 AM**
Updated: **May 2, 2023 at 9:02 AM**

Tags: **Rolled Back Odometer, Odometer Fraud, Odometer, Title, Title Check**



NOW PLAYING

KPRC 2 Investigates...    Showers held back b...    Tucker Carlson spea...    Thieves use...    Driver hit, killed

More than a year after Wasim Akram purchased a car from Carvana, he discovered the mileage on the 2015 Toyota Corolla had been reported as much higher than when he purchased it years later. The Harris County Tax Office would not renew his registration because there was a hold on the car's title.

"I was driving the car like it was illegal," Akram explained. "That's what it was. I mean, with no registration."

He had no registration and a hold on the title to his Corolla. Akram wanted to know why Carvana hadn't notified him when the state rejected the title.

"When you reached out to Carvana, they should have had some idea of what was going on already?" investigative reporter Amy Davis asked.

"They said they don't know," Akram answered. "They won't be able to fix it. And they said they missed... like when they did the title, they wrote wrong. That's what they told me."

"That it was a typo?" Davis asked.

"Yeah, typo," Akram confirmed.

## Carvana ad lists vehicle with 13,331 miles

The listing on Carvana featured a 2015 Toyota Corolla with 13,331 miles. The price was just under $19,000.

Akram took out a loan from a bank with a 4.3% percent interest rate. He made a down payment to Carvana, and the car was his... in theory.

Even though Akram drove the car for an entire year, for all of 2022, he didn't realize there was a hold on the car's title until he tried to renew the registration.

The registration denial letter from the Harris County Tax Office reads "Your title was rejected due to the fact that the odometer reading went down from 22756 to 13343."

Carvana did take the car back. They refunded Akram's down payment and paid his loan in full. But that left him with no vehicle.

"Well, it was frustrating because right now the interest rate is high. Besides the buying a vehicle, it's not as easy as it used to be," Akram said.

When he did find a new used car, the best interest rate he could get was almost 6% higher than the one he had secured originally.

## What happened?

When we reached out to Carvana, a spokesperson told us they determined the mileage on the odometer was correct when they sold it to Akram. They said the old mileage listed on the title was a clerical error, but one that went unnoticed until Akram couldn't register the car. tampered with or rolled back. Carvana has offered Akram $1,000 to help cover his extra expenses with the new car loan.

 NEWS    WEATHER    KPRC 2+    INVESTIGATES    TRAFFIC    SPORTS    DISCOVER    HOUSTON LIFE    NEWSLETTERS

Carvana Communications Director Kristin Thwaites sent us the following statement:

"Back in 2021, we listed this vehicle with the correct mileage and the customer paid the appropriate amount as it was accurately advertised. Unfortunately, the paper title showed a discrepancy due to a clerical error and we're compensating Mr. Akram to make it right considering the hassle he's experienced in this rare instance."

## Protect yourself when buying a used vehicle

State law does not require a dealer to verify a vehicle's history, but the Texas Department of Motor Vehicles says you should do that before you buy any used vehicle.

A **title check** will cost you between $8-$12.. and Akram can confirm--it's a lot less than what you could lose if you don't do your homework.

Buyers who have a complaint about a dealer's sales practices **may file a complaint here.** The Texas DMV also offers "Smart Buyer" tips with information on how consumers can protect themselves when purchasing a used vehicle:

• **Tips for Buying a Previously Owned Car**

• **Tips for Car Buyers - Checking a Vehicles Mileage**

*Copyright 2023 by KPRC Click2Houston - All rights reserved.*

## ABOUT THE AUTHOR:



**Amy Davis**
Passionate consumer advocate, mom of 3, addicted to coffee, hairspray and pastries.

✉ **email**   🅕 **facebook**   🐦 **twitter**

Loading...

Sponsored

Recommended by ⊚utbrain